UNITED STATES v. VIRGINIA–CAROLINA CHEMICAL CO. et al.

(Circuit Court, M. D. Tennessee. July 3, 1908.)

No. 963.

1. CRIMINAL LAW — CONSPIRACY IN RESTRAINT OF INTERSTATE TRADE—INDICTMENT—SERVICE OF PROCESS ON NONRESIDENT CORPORATION.

   Upon an indictment for conspiracy in restraint of trade under Sherman Anti-Trust Act July 2, 1890, c. 647, § 3, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3201), the court has power, by virtue of Rev. St. § 716 (U. S. Comp. St. 1901, p. 580), which authorizes such courts to issue all writs "necessary for the exercise of their respective jurisdictions," to issue process to another state to bring before it corporation defendants who are citizens of such state and cannot be found or served in the state or district of the indictment.

2. MONOPOLIES—INDICTMENT.

   An indictment for conspiracy in restraint of interstate trade and commerce, in violation of· Sherman Anti-Trust Act July 2, 1890, c. 647, § 3, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3201), considered, and *held* sufficient.

3. GRAND JURY—APPEARANCE OF GOVERNMENT COUNSEL—SPECIAL ASSISTANT TO UNITED STATES ATTORNEY.

   Under Rev. St. §§ 363, 366 (U. S. Comp. St. 1901, pp. 208, 209), the former of which authorizes the Attorney General to employ counsel "to assist the district attorneys in the discharge of their duties," while the latter provides for the issuance of a commission to such attorneys as are specially retained by the department of justice "to assist in the trial of any case in which the government is interested," which must be construed together and as referring to the same class of special assistants, the Attorney General was not authorized to appoint special assistants to a district attorney having the authority or right to appear before and participate in the proceedings of a grand jury, and the presence of two such attorneys specially appointed for a particular case and their examination of witnesses on whose testimony an indictment was returned renders such indictment invalid.

A. M. Tillman, U. S. Atty., Oliver E. Pagan, Special Asst. Atty. Gen., and Edward T. Sanford, Asst. Atty. Gen., for the United States.

John J. Vertrees, John S. Miller, James C. Bradford, Henry A. M. Smith, Marcellus Green, Geo. F. Von Kolintz and James M. Gifford, for defendants.

McCALL, District Judge. The indictment in this case is found under the "Sherman Anti-Trust Law." The defendants are corporations and individuals, numbering about 60. The corporation defendants may be divided into three classes, viz.: (1) Foreign corporations; those chartered under the laws of other states, and .which have not complied with the laws of Tennessee in relation to such corporations doing business within this state, and have no agents nor are doing business in Tennessee. (2) Foreign corporations which have complied with the laws of. Tennessee, and have agents and are doing business in Tennessee. (3) Domestic corporations, those chartered under the laws of Tennessee. One class of .defendants move to quash the summons and return. Another class demurs to the indictment, and also files pleas in abatement. These several defenses are

interposed, heard, and disposed of by agreement of counsel without regard to the order of pleading.

### 1. On Motion to Quash Summons.

Motions to quash the summonses are made by the corporation defendants which are citizens and residents of states other than Tennessee and have no agents or place of business in Tennessee. The motions are based upon the ground that defendants are foreign corporations, and had no agents or other representatives within the state of Tennessee upon whom summons could be legally served, and that summonses, issued to the states of their respective residences and citizenship, and there served, were without authority of law, and that this court has no jurisdiction over them.

This precise question was before me in the case of United States v. Standard Oil Company. The conclusions there reached are stated in the opinion, reported in 154 Fed. 728. The summons in that case, as in the case at bar, was issued under Rev. St. § 716 (U. S. Comp. St. 1901, p. 580), which is as follows:

"Sec. 716. The Supreme Court and the Circuit and District Courts shall have power to issue writs of scire facias. They shall also have power to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law."

It is respectfully but earnestly insisted for the defendants that the conclusion in that case is erroneous, and several cases are cited to sustain that contention, viz.: McIntire v. Wood, 7 Cranch, 506, 3 L. Ed. 420; McClung v. Silliman, 6 Wheat. 598, 5 L. Ed. 340; Bath County v. Amy, 13 Wall. 249, 20 L. Ed. 539; Rosenbaum v. Bauer, 120 U. S. 450, 7 Sup. Ct. 633, 30 L. Ed. 743. A careful examination of these cases discloses that the question therein decided was that the court, having no jurisdiction of the subject-matter of a controversy, could not, by virtue of section 716, Rev. St., acquire and exercise jurisdiction by the issuance of a writ of mandamus and cause the same to be served upon the party whom it was sought to force to do some act; the refusal or failure to do which being the subject of complaint. In the case of Bath County v. Amy, supra, the Supreme Court, after reviewing McIntire v. Wood, McClung v. Silliman, and Kendall v. U. S., 12 Pet. 524, 9 L. Ed. 1181, announced the rule that the power to issue a writ of mandamus as an original and independent proceeding does not therein belong to the Circuit Court, and approving the holding in the Silliman Case, supra, that the power to issue writs of mandamus was authorized by section 716, Rev. St., only in cases where the jurisdiction already existed, and not where it is to be created or acquired by means of the writ proposed to be sued out. "In other words, the writ cannot be made to confer a jurisdiction which the Circuit Court would not have without it. It is authorized only when ancillary to a jurisdiction already acquired." To the same effect is Rosenbaum v. Bauer, supra.

In the case of the United States v. Plumer, 27 Fed. Cas. No. 16,-056, it was held that section 716, Rev. St., did not authorize the issuance of a writ of error to review the judgment of a District Court

in a criminal case, when such authority had not been given the Circuit Court by the judiciary act. In that case the defendant had been indicted, tried, convicted, and sentenced, and the right of appeal lost by the waiver of the motion for a new trial, and the court said:

"Completed, as the proceedings in this case were, the Circuit Court, at the date of this application, had no more power over it than if the indictment had not been found."

Certainly, section 716, Rev. St., does not authorize the court to reacquire jurisdiction of a case thus finally disposed of, or to acquire original jurisdiction of the subject-matter of a controversy when there is none conferred by law. As is well said by counsel for the government:

"These cases upon which the defendants rely as a proper construction of this section are to be distinguished upon the ground that they merely deny the right to enlarge the jurisdiction of the court as to the subject-matter of litigation by the issuance of any writ under section 716."

It was held, in the Standard Oil Case, supra, that the court had jurisdiction of the subject-matter, and, in order to enable the court to exercise that jurisdiction, it was necessary to issue the summons under section 716, Rev. St., as was done in that case. The jurisdiction existed; but, in order to exercise it, the defendant must be brought before the court, and it became necessary for that purpose to resort to the power granted by Congress in section 716, Rev. St. It was not necessary, in order to acquire jurisdiction of the case, to resort to section 716, because jurisdiction over the offense charged in the indictment was conferred by the commerce act. It was necessary to resort to section 716 in order to enable the court to exercise the jurisdiction conferred by Congress under the commerce act.

Able counsel for defendants, it seems to us, virtually concede this proposition in their brief. There it is said that:

"The statute does not authorize writs to be issued under the general power to issue 'all other writs' in order to acquire jurisdiction. The jurisdiction must already exist in order for writs to issue under this power. The 'necessity' of the statute is a judicial one. When some kind of writ that is reasonable and proper is necessary in order for the court to exercise its jurisdiction (do what in justice ought to be done), it may issue."

The necessity is as imperative to issue summons for the resident defendant corporations before the court can exercise its jurisdiction in the trial of this case as it is to issue summons for the foreign corporations. The issuance of the writ in neither case is necessary in order to acquire jurisdiction of the case, but it is necessary in both cases to enable the court to exercise the jurisdiction it has.

In the excerpt quoted from brief of defendant's counsel, it is stated that:

"The jurisdiction must already exist in order for writs to issue under this power"—meaning section 716.

If by this is meant that jurisdiction must exist over the defendant, then the issuance of summons would be useless; but if it is meant that jurisdiction of the subject-matter must exist before summons can issue under section 716, Rev. St., then the answer is that that is

precisely the condition in this case. In other words, the issuance of the summons and its service is but one step amongst others that is necessary to enable the court to exercise its jurisdiction in the pending case, of which it has jurisdiction by statute. In my judgment, the contention of the defendants as to this branch of the case is not sustained by the authorities cited.

It is insisted that if it be conceded that the holding in the Standard Oil Company Case, supra, is correct, it does not follow that that case should be controlling in the case at bar. It is pointed out that the indictment in that case was found under Commerce Act Feb. 4, 1887, c. 104, 24 Stat. 379 (U. S. Comp. St. 1901, p. 3154), which is silent as to process and procedure, and that this indictment is found under Sherman Anti-Trust Act July 2, 1890, c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), which provides, among other things, that in injunction cases brought thereunder process may issue to any state, but is silent as to process to bring those indicted thereunder before the court to answer the criminal charge. Because of this omission, it is argued that the rule, "Expressio unius est exclusio alterius," applies. Removal Act March 3, 1887, c. 373, 24 Stat. 552 (U. S. Comp. St. 1901, p. 508), provides that no civil suit shall be brought "against any person by any original process or proceeding in any other district than that whereof he is an inhabitant." Act Aug. 13, 1888, c. 866, 25 Stat. 434 (U. S. Comp. St. 1901, p. 508). This was the law when the Sherman act was passed in 1890. So, also, section 716, Rev. St., was then and is now in force.

With these two laws in mind, Congress passed the Sherman antitrust act, by which civil actions are authorized, and certain conduct denounced as crimes. Is it not reasonable that, while Congress was devising means by which defendants in such civil suits might be served with process and brought before the courts, it also considered that subject in relation to defendants in criminal cases? Is it not a reasonable conclusion that it inserted the clause as to issuance of process in civil cases to avoid the provision of the removal act of 1888, supra, and that it omitted to insert a clause as to defendants in criminal cases because that was then provided for under section 716, Rev. St., and further legislation on that subject was therefore unnecessary?

Here we find Congress engaged in perfecting and enacting a law, declaring certain acts to be crimes, and authorizing the bringing of civil suits to enjoin the commission thereof. The act upon its face discloses the fact that Congress had under consideration the subject of proper proceeding by which parties could be brought before the courts. That in civil actions thereunder, it provides that process may issue for defendants to other states than the state where the suit is pending, for the purpose, as we have seen, of avoiding the provisions of the removal act of 1888. Is it a reasonable conclusion that Congress was careful enough to make this provision as to civil suits, and so careless as to fail to insert a provision for bringing before the court corporation defendants in a criminal suit, which are citizens and residents of other states than the state wherein the indictment is pending, unless that was then provided for by a statute then in force? I cannot think so. To hold otherwise, it seems,

would necessarily imply that Congress was extremely careless, or purposely left a loophole by which such defendants could violate the Sherman anti-trust act with impunity and escape prosecution and punishment.

The motions to quash the summons and service thereof made by this class of defendants are disallowed, and this includes all nonresident corporation defendants of this class, except Swift & Co., of Illinois, and the latter's motion to quash is allowed upon the ground that it appears that it was served on a party not in any way connected with that company. The motion to quash, made by certain other defendants upon the ground that the service does not show that it was made upon the proper officer, is also allowed, but leave is granted to amend such service, if that is desirable.

### 2. On the Demurrer.

The individual defendants and the domestic and foreign corporations, having agents and doing business in Tennessee, demur to the indictment. The indictment is a lengthy one. Many grounds of demurrer are assigned. The briefs of counsel for and against the demurrer are exhaustive and evince much labor, research, and learning. If the court should undertake to enter upon a discussion of the many questions presented, some important and others less so, the task would be all but interminable, and, the court feels, of little real use. Suffice it to say that, after as careful an examination as the court is able to give the many questions raised, it has concluded that the demurrer should be overruled. The indictment charges the defendants, in language both apt and with certainty of meaning, with acts denounced by statute as crimes. It seems to contain every element of the offense intended to be charged, and sufficiently apprises the defendants of what they must meet. This is all that is required. Armour Packing Co. v. U. S. (decided by Supreme Court of United States, March 16, 1908, not yet officially reported) 28 Sup. Ct. 428, 52 L. Ed. 681.

### 3. On the Plea in Abatement.

We come now to consider the pleas in abatement to the indictment. This defense is interposed by the defendants who also demurred. The substance of the pleas is that Mr. E. T. Sanford and Mr. J. Harwood Graves, neither of whom is a citizen or resident of the Middle district of Tennessee, and neither of whom was the district attorney, nor an assistant district attorney, were present in the grand jury room, examining witnesses and participating in the proceedings, when the indictment was found, and that neither of them had any right to be there. Had this indictment been found subsequent to June 30, 1906, this plea would not now be before the court. On that day Congress passed an act, presently to be quoted, that provides that the Attorney General may do just what is complained of by the pleas in abatement. But this indictment was found May 26, 1906, and therefore the pleas must be considered and disposed of under the law as it was on the date that it was found. The pleas were replied to by the United States, and demurrers were filed to the replication. The sole

question which is presented by the pleas in abatement, the special traverse, and the demurrer thereto is this:

"Whether under the state of facts set forth in the special traverses, the presence of special assistants to the district attorney in the grand jury room and their participation in the proceedings before the grand jury, as therein set forth, constitute, as a matter of law, ground on account of which the indictment found against the defendants should be abated."

The facts are these: Edward T. Sanford and J. Harwood Graves, both being nonresidents of the Middle district of Tennessee, were employed, appointed, and commissioned by the Attorney General of the United States to do certain work set forth in the commission given to each of them by the Attorney General, as follows:

"You are hereby appointed a special assistant to the United States attorney for the Middle district of Tennessee to assist in the investigation before the grand jury in that district of the so-called 'Fertilizer Trust,' and in the trial of any suits and prosecutions on behalf of the United States, against the Virginia-Carolina Chemical Company, a corporation, and other corporations and individuals arising from such investigation. Your compensation will be determined by the Attorney General upon the completion of your services, and will be payable from the appropriation for the enforcement of anti-trust laws. This appointment is subject to any change which may be made by this department. Before entering upon duty, execute and file with this department the customary oath of office."

With these commissions, or letters of appointment, said Sanford and Graves repaired to Nashville, Tenn., and prior to the commencement of the investigation before the grand jury presented their letters of appointment to the United States attorney for the Middle district of Tennessee, who thereupon presented said Sanford and Graves to the honorable United States circuit judge then and there presiding, with the information of their appointment, and stated that he desired that they assist him in the investigation before the grand jury, and who were, upon motion of the United States attorney, admitted to practice law in this court. Thereupon the United States attorney presented said Sanford and Graves to the grand jury with the information that they would assist in the pending investigation. Sanford and Graves were present during the investigation by the grand jury and assisted and aided therein, and participated in the examination of witnesses and heard the testimony introduced before the grand jury. Neither of said gentlemen were present in the grand jury room after the closing of the testimony, or when the jury was deliberating as to its findings and voting upon the question of returning the bill of indictment. Upon these facts, the court is asked to abate the indictment. Should it be done?

A correct answer to this question is attended with difficulties. For more than a century it has been the settled policy of the law and of the courts in its administration and enforcement to protect inviolate the secrecy of proceedings before grand juries in the United States courts, and to guard and protect them from every agency calculated to influence them in the discharge of their duties, save and except the testimony of witnesses who appear before them for examination. None but witnesses and the proper law officers of the government have any business before them, and the latter only to examine wit-

nesses and in a proper way and at the proper time express his opinion as to the meaning of the law. There is no controversy here as to the proposition that the United States attorney and his regular assistant may attend the sessions of the grand jury for the purpose of examining witnesses, so the question narrows down to this: Were Messrs. Sanford and Graves proper officers to attend the sessions of the grand jury and examine witnesses before it?

Their letters of appointment or commissions designated them as "special assistants" to the United States attorney. It is clear that they were not United States attorneys for the Middle district of Tennessee. They are not so named in their commissions. It is well-settled that they were not assistant United States attorneys. U. S. v. Crosthwaite, 168 U. S. 375, 18 Sup. Ct. 107, 42 L. Ed. 507. There the court says:

"We are of the opinion that the better construction of section 365 is that one who receives a commission as special assistant to the district attorney for particular cases, or for a single term of the court, or for a limited time, is not an assistant district attorney within the meaning of that section."

There Crosthwaite was appointed special assistant to the United States attorney for the district of Idaho under section 363, the same section that authorized the appointment of Sanford and Graves as special assistants to the United States attorney for the Middle district of Tennessee. He brought suit against the United States for pay for his services. The Attorney General had declined to give to him the certificate required by section 365, and it was considered by the court whether he could be paid as an assistant United States attorney, and the court, as has been seen, adjudged that he was not such an officer.

That brings us to the question: Could a special assistant to the United States attorney, at the time of the finding of this indictment, properly appear before a grand jury, and perform the duties of the United States attorney or his regular assistant in the examination of witnesses, and conduct, or assist in, the investigations of the so-called "Fertilizer Trust," as was done in this case? It is true that the commissions given to Sanford and Graves by the Attorney General set forth that they were appointed to assist in the investigation before the grand jury in this district of the so-called "Fertilizer Trust," but, under what statute, was the Attorney General authorized to issue such a commission?

The answer by the United States is that section 363, Rev. St. (U. S. Comp. St. 1901, pp. 208, 209), authorizes it, and in these words:

"The Attorney-General shall, whenever in his opinion the public interest requires it, employ and retain in the name of the United States, such attorneys and counsellors at law at he may think necessary to assist the district attorneys in the discharge of their duties, and shall stipulate with such assistant attorneys and counsellors the amount of compensation, and shall have supervision of their conduct and proceedings."

It is pointed out the words used here, "assist the district attorneys in the discharge of their duties," are broad and cover all duties of the district attorney, and hence must embrace this duty before the grand jury. To this contention the defendants respond that this

clause in section 363 is limited and defined by section 366, which is in these words:

"Every attorney and counsellor who is specially retained under the authority of the Department of Justice to assist in the trial of any case in which the government is interested, shall receive a commission from the head of such department, as a special assistant to the Attorney General or to some one of the district attorneys, as the nature of the appointment may require, and shall take the oath required by law to be taken by the district attorneys, and shall be subject to all the liabilities imposed upon them by law."

So we have in section 363 authority for the Attorney General to appoint attorneys "to assist the district attorneys in the discharge of their duties," and in section 366 we have the Attorney General authorized to issue commissions to every attorney and counsellor retained by the Department of Justice "to assist in the trial of any case in which the government is interested." It has been held in two jurisdictions that appointments made under section 363 authorized the parties so appointed to assist the district attorney in all of his duties and authorized the appearance of such special assistant to the district attorney to go before the grand jury and participate in the investigation there pending, as was done in this case; such work being a part of the duties of the district attorneys. U. S. v. Cobban (C. C.) 127 Fed. 713; U. S. v. Twining (D. C.) 132 Fed. 129. Counsel for the United States also cites U. S. v. Crosthwaite, 168 U. S. 375, 18 Sup. Ct. 107, 42 L. Ed. 507, to sustain this proposition. A careful examination of the latter case leads to the conclusion that this question was not raised nor decided there; but, in so far as that case is important here, it decides that a special assistant to the district attorney, under section 363, is not a regular assistant district attorney. In the Cobban and Twining Cases, supra, it was held that sections 363 and 366, Rev. St., were sections taken from different acts of Congress and should be construed entirely independent of each other, and that the language, "to assist the district attorneys in the discharge of their duties," in section 363, was not limited or affected by the language "to assist in the trial of any case in which the government is interested," in section 366, and therefore special assistants to the district attorney were authorized to assist the district attorney in all of his duties, including his duties before the grand jury. The learned judges who decided these cases made no reference to U. S. v. Crosthwaite, supra, where it is stated that sections 363, 364, 365, and 366, Rev. St., are the sixteenth and seventeenth sections of Act June 22, 1870, c. 150, 16 Stat. 162, 164, which were preserved and reproduced in the Revised Statutes at the above numbers. We think therefore that they should be considered as parts of the same act and construed together. U. S. v. Rosenthal (C. C.) 121 Fed. 868.

We will so consider them. As we have seen, section 363 authorizes the Attorney General to appoint attorneys and counsellors to assist the district attorneys in the discharge of their duties, and fixes the compensation therefor. Section 366 does not authorize the appointment of any one, but provides for the arming of the attorneys and counsellors appointed under section 363 with commissions as evidence of their appointment, prescribes the character of oath they

shall take, and defines their duties and liabilities, and this, too, for those attorneys and counsellors only who are specially retained by the Department of Justice in the trial of any cases in which the government is interested. They are employed and retained to assist the district attorneys in discharging their duties. These duties are stated, in section 366, to be "to assist in the trial of cases." Section 363 authorizes their appointment to assist, and section 366 especially states what they are to assist in doing, viz., "in the trial of cases." Certainly, the trial of a case does not begin before a grand jury. That is a secret investigation from which the proposed defendant is excluded and prohibited from being heard in person, by counsel, or through witnesses. An entirely ex parte proceeding to determine whether or not, upon the testimony of the government witnesses alone, the accused should be put upon his trial before a court and jury of his peers of his own selection, when and where he can be heard in person, by his counsel and his witnesses. U. S. v. Rosenthal, supra.

It is to be regretted that this court cannot follow the holdings in the Cobban and Twining Cases, but is constrained to hold that no authority existed at or before the finding of this indictment authorizing the Attorney General of the United States to issue a commission that would, with the sanction of law, authorize special assistants to the United States attorney to appear before and participate in the proceedings of a grand jury, as was done in this case. The Congress of the United States so understood the law to be at that time. On June 30, 1906 (more than a month after the indictment was found), it was enacted as follows:

"That the Attorney General or any officer of the Department of Justice, or any attorney or counsellor specially appointed by the Attorney General under any provision of law, may, when thereunto specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which district attorneys now are or hereafter may be by law authorized to conduct, whether or not he or they be residents of the district in which such proceeding is brought.

"Approved June 30, 1906."

Act June 30, 1906, c. 3935, 34 Stat. 816 (U. S. Comp. St. Supp. 1907, p. 44).

Here we have Congress, after this indictment was found, enacting a law authorizing the Attorney General to do the very thing that was attempted to be done in this case; that is, appoint special assistants to the district attorneys to assist them in discharging their duties in grand jury proceedings. Mr. Gillet, of the House Judiciary Committee, reported the bill from that committee, and therein said:

"As the law now stands, only the district attorney has any authority to appear before a grand jury, no matter how important the case may be, and no matter how necessary it may be to the interests of the government to have the assistance of one who is specially or particularly qualified by reason of his peculiar knowledge and skill, to properly present to the grand jury the question being considered by it."

He understood, and Congress understood, that at that time only the district attorneys had authority to appear before a grand jury, no matter how important the case may be.

Why pass this act, if it was previously the law? This question was asked by Mr. Justice Strong, in Bath County v. Amy, 13 Wall. 249, 20 L. Ed. 539, in discussing the eleventh and fourteenth sections of the Judiciary Act of 1789 (Act Sept. 24, 1789, c 20, 1 Stat. 78, 81), where it was insisted the power to issue certain writs was given by section 11, and wherein by said section 14 that power was expressly granted, and he inquires:

"Why make this grant if it had been previously made in the eleventh section?"

Had the Attorney General been authorized to appoint and commission special assistants to the district attorneys, with authority to conduct proceedings before the grand juries of the country, the act of June 30, 1906, would not have been passed. There would have been no need for it. It seems needless to add that, if the contention of counsel for the government as to the law prior to the passage of the act of June 30, 1906, is correct, that act would be but declaratory thereof, and it would in no way affect it. The court, however, does not agree with counsel for the government in the contention that the act of June 30th was the law prior to that date. It follows therefore that the court is of the opinion that the Attorney General of the United States was not authorized by law to confer upon the special assistants to the district attorney the right to conduct investigations before the grand jury, as was done in this case, and that Messrs. Sanford and Graves were improperly before the grand jury under the facts stated herein above.

Did their presence and their participation in the proceedings before the grand jury influence that body in its action?

It must be assumed that the grand jury was composed of men of average intelligence and information, who would have known that the government must have been greatly interested in the finding of this indictment and in the prosecution of the defendants before it would send two eminent lawyers, neither of whom was a resident of this district, to Nashville to especially conduct this investigation. Their presence there and participation in this investigation was bound to have impressed the jury and conveyed to them the information that the Department of Justice was exceedingly anxious that this indictment be found. Who can say how far-reaching this influence was, and what effect it had on the individual juror when he came to vote upon the finding of the indictment, assuming, as we do and must, that the conduct of these special assistants before the grand jury was as circumspect in every particular as would have been that of the district attorney had he been present and alone conducting the investigation.

As is said in U. S. v. Edgerton (D. C.) 80 Fed. 374:

"There must not only be no improper influence or suggestion in the grand jury room, but, as suggested in Lewis v. Commissioners, 74 N. C. 194, there must be no opportunity therefor. If the presence of an unauthorized person in the grand jury room may be excused, who will set bounds to the abuse to follow such a breach of the safeguards which surround the grand jury."

The same authority holds that the rule that no person other than the witness and the legally authorized attorney for the government

can be present during the sessions of the grand jury is inherent in the grand jury system with all the force of a statutory enactment.

In Wilson v. State, 70 Miss. 595, 13 South. 225, 35 Am. St. Rep. 664, the court said:

"It is a serious mistake to suppose that the right of one accused or suspected of a crime to the orderly and impartial administration of the law begins only after indictment. Immunity from prosecutions for indictable offenses, except by presentment by the grand jury, is declared and preserved by the organic law of this and all other states, and though, by reason of the secrecy of the proceedings before that body, its action is seldom brought in review, it cannot be doubted that one whose acts are there the subject of investigation is as much entitled to the just, impartial, and unbiased judgment of that body as he is to that of the petit jury on his final trial."

In Jacob Sharp's Case, 107 N. Y. 476, 14 N. E. 348, 1 Am. St. Rep. 851, the court, through Judge Peckham (now of the Supreme Court of the United States), said:

"The law must protect all who come within its sphere, whether the person who invokes its protection seems to be sorely pressed by the weight of the inculpatory evidence or not. It cannot alter, for the purpose of securing the conviction of one who may be called or regarded as a great criminal, and yet be invoked for the purpose of sheltering an innocent man. In the eyes of the law, all are innocent until convicted in accordance with the forms of law, and by a close adherence to its rules."

To this doctrine this court subscribes. Let it be repeated:

"In the eyes of the law, all are innocent until convicted in accordance with the forms of law, and by a close adherence to its rules."

The result is that the demurrer to the replication is sustained, the plea in abatement allowed, and the indictment quashed.

Orders will be entered consistent with the views expressed in this opinion.