**UNITED STATES of America**

v.

**Dean Charles TREADWAY.**

**Crim. No. 3–77–305.**

United States District Court,
N. D. Texas,
Dallas Division.

Feb. 21, 1978.

Kenneth J. Mighell, U. S. Atty., Fort Worth, Tex., Laurence K. Gustafson, Mary Coleen T. Sewell, and Kevin B. Pratt, U. S. Dept. of Justice, Anti-Trust Div., Dallas, Tex., for plaintiff.

Emmett Colvin, Jr., of Colvin & Jackson, Dallas, Tex., William B. West, III and William F. Carroll, of Clark, West, Keller, Sanders & Butler, Dallas, Tex., for defendant.

MEMORANDUM OPINION AND ORDER

PATRICK E. HIGGINBOTHAM, District Judge.

*Introduction*

Dean Charles Treadway is charged with obstruction of justice. He has moved to

dismiss the indictment because an attorney with the Antitrust Division of the Department of Justice appeared before the indicting grand jury as both a prosecutor and a witness. Because this duality violates both the Code of Professional Responsibility and Rule 6(d), Fed.R.Crim.P. and otherwise presents intolerable potential for abuse of the grand jury, the indictment must be quashed.

The facts are uncontested. The Antitrust Division of the Department of Justice through a grand jury convened in the Southern District of Texas was conducting a major grand jury investigation of alleged price-fixing in the cardboard container industry. The government became suspicious that officers of Boise-Cascade (Treadway was one) obstructed justice by withholding or destroying subpoenaed documents. During April, 1977, a grand jury convened in the Northern District of Texas investigated this potential obstruction of justice. J. Albert Kroemer was the Antitrust Division attorney in charge of the price-fixing investigation. He drafted the subpoena calling for the documents now claimed to be missing. Kroemer also assisted in presenting the obstruction of justice claims to the grand jury. On April 14, 1977, Kroemer was sworn as a witness and testified before the grand jury investigating the obstruction of justice charges. Although most of his "testimony" was in fact background information, his testimony also communicated to the grand jury the materiality to the price-fixing investigation of documents of the type said to be missing. This message was important because it simultaneously swept both ends of any defensive lineup. First, the greater the materiality of the missing documents, the more compelling the inference of specific intent to obstruct justice that flowed from any intentional withholding or destruction. Second, the greater their materiality, the less the plausibility of a hypothesis of inadvertent nonproduction. DR 5 forbade Kroemer from giving this testimony on substantial, contested matters

and also participating as an advocate. Rule 6(d) authorized his presence in the grand jury room as a witness, but only while he was testifying. After testifying, Kroemer remained in the grand jury room as a prosecutor, violating both DR 5 and Rule 6(d).

### The Ethical Regiment

■ The American Bar Association Code of Responsibility (1975) provides in Ethical Considerations EC 5–9:

> The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively.

This ethical consideration must be read in conjunction with DR 9, which entreats lawyers to avoid even the appearance of impropriety. The ethical discipline of the American lawyer, simply put, has concluded that an attorney who testifies to material, contested facts ought not act as an advocate in that same matter.[1] The Second Circuit explained in *United States v. Alu,* 246 F.2d 29, 33–34 (2nd Cir. 1957):

> It has been widely recognized that lawyers representing litigants should not be called as witnesses in trials involving those litigants if such testimony can be avoided consonant with the end of obtaining justice. We believe that this prohibition is applicable to the United States Government and its attorneys as well as to private litigants and their attorneys. It is obvious that the opportunity for tailoring a witness's testimony to the needs of the Government's case is maximized if recourse is permitted to the testimony of an experienced trial attorney who is interested in the successful presentation of that case. Especially in criminal litigation, where so much is at stake for the defendant, must the Bench and Bar demand adherence to a principal that is designed to ensure objectivity in the presentation of evidence.

*Semler v. Oregon Bd. of Dental Exam'ns,* 294 U.S. 608, 612, 55 S.Ct. 570, 572, 79 L.Ed. 1086.

---

1. "What is generally called the 'ethics' of the profession is but the consensus of expert opinion as to the necessity of . . . standards."

The *Alu* case and most other pertinent reported decisions decided conflicts presented by attorneys who testified at trial. Here a prosecuting attorney testified before the grand jury, where the one-sided nature of the proceedings increased the potential for abuse. The problem is not that a government attorney testified for the prosecution before the grand jury; the problem is a conflict in roles because the government attorney acted as both a prosecutor and a witness. The government argues that the Code of Professional Responsibility allows an attorney to be both attorney and witness when: 1) the testimony will relate solely to an uncontested matter; or 2) if the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony. (DR 5–101[B], DR 5–102[A]). Kroemer's testimony does not fall under either exception to the general prohibition; furthermore, the act of testifying invited inquiry not only into Kroemer's but all grand jury testimony necessary to lend it context. Because this type of inquiry inevitably frustrates the secrecy sought by Rule 6, Fed.R.Crim.P., it follows inescapably that the prohibitions of the canons ought to be scrupulously followed in a grand jury investigation.[2]

It does not follow that the sanction for violating the Disciplinary Rules necessarily ought to be a quashing of an indictment. The code is the bar's discipline; the bar' ought to be its primary enforcers, at least where the questioned conduct is extraneous to judicial proceedings. More to the point, frustrating a criminal prosecution to enforce a rule regulating intra-professional relations could pervert the public interest. The primary focus here is not with any role defendant urges the court has in the enforcement of the Code of Professional Responsibility; instead, the focus is upon the court's supervisory role over the administration of justice. Conformity to ethical standards is but one pertinent inquiry in this superintendence. That is, whether Kroemer's dual role violated a Disciplinary Rule does not mechanically determine whether this indictment is to be quashed. A disciplinary rule is pertinent only if its objective is to guard against conduct inconsistent with a fairly administered judicial system. Our inquiry then is first into the role of the court and second into the purpose of the Disciplinary Rule. These inquiries demonstrate a coincidence in purpose of Disciplinary Rules 5 and 9 and Rule 6(d) Fed.R. Crim.P.

First, the courts' supervisory role over the administration of justice cannot be gainsaid. The courts have recognized their responsibility in the administration of criminal law, cognizant that unlike most private litigation, there is a public interest as well as a private interest to be served. *See,* The Supervisory Power of the Federal Courts, 76 Harv.L.Rev. 1658 (1963). The doctrine of entrapment itself finds its nourishment in this doctrine. Congress did not condition its statutory offenses upon the techniques of law enforcement methods, nor is the executive's duty to see that penal statutes are faithfully executed so qualified. Yet, the courts, because of the manner of executive enforcement, have refused to sustain otherwise valid convictions. *See, e. g., McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943). The exclusionary rules of evidence are themselves bottomed on this judicial duty with its twin, judicial power. No claim of absolute executive discretion to prosecute overrides these decisions. As stated by Justice Roberts in *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (dissenting also on behalf of Justices Stone and Brandeis):

**2.** The American Bar Association standards relating to the Administration of Justice provides in § 3.5(b):

The prosecutor should not make statements or arguments in an effort to influence grand jury action in a manner which would be impermissible at trial before a petit jury.

This case presents only the question of a government attorney who acts both as a presenting attorney and witness. Testimony of an attorney in Kroemer's position should not be lightly undertaken even if the plan were to confine his role to that of witness. Moreover, reliance upon exceptions to DR 5 would be equally hazardous.

The protection of its own function and the preservation of the purity of its own temple belongs only to the court. It is the province of the court and the court alone to protect itself and the government from such prostitution of the criminal law . . . *Id.,* 457, 53 S.Ct. at 218.

Second, the purpose of the canon is to maintain at least the appearance of a nonpartisan advocate. As one commentator has put it:

Almost inevitably, the two roles will become mixed; the partisanship of the advocate will be decreased, and the testimony of the witness will become less detached. Ultimately, the testifying advocate occupies the dubious and embarrassing position of one trying to argue convincingly to the jury the strength and impartiality of his own testimony. The dual role is too difficult . . . Sutton, *The Testifying Advocate,* 41 Tex.L. Rev. 477, 481 (1963).

Here Kroemer in seeking an indictment perforce asked the jurors to accept his testimony. As a representative of the United States government, a prosecutor possesses potent credibility. That power is recognized in judicial decisions blocking efforts of prosecutors to personally vouch for the credibility of a witness or the justness of a conviction. When Kroemer as "lead counsel" over the investigation and a presenting attorney seeking an indictment took the oath of a witness in the grand jury room, he placed himself in the position of vouching for the justness of an indictment. Without the presence of a judge, opposing counsel, or the press, the potential for abuse is patent.

### Rule 6(d) and the Dual Role

■ Once Kroemer testified before the grand jury, he could not remain as a prosecuting attorney. Rule 6(d) of the Fed.R. Crim.P. lists persons who may be present before a grand jury:

Attorneys for the government, the witness under examination, interpretators when needed, and, for the purpose of taking the evidence, a stenographer or operator of recording device may be present while a grand jury is in session, but no other person other than the jurors may be present while the grand jury is deliberating or voting.

■ A witness not under examination may not be present in the grand jury room. If that witness remains in the room, while another witness testifies, he is an unauthorized person under Rule 6(d). The presence of an unauthorized person before the grand jury is *per se* grounds for quashing an indictment. *United States v. Braniff Airways,* 428 F.Supp. 579, 582–583 (W.D.Tex. 1977): *Latham v. United States,* 226 F. 420 (5th Cir. 1915). In establishing a *per se* rule for violation of this rule, the Fifth Circuit held:

The right of a citizen to an investigation by a grand jury pursuant to the law of the land is invaded by the participation of an unauthorized person in such proceedings, be that participation great or small. It is not necessary that participation should be corrupt, or that unfair means were used. If the person participating was unauthorized, it was unlawful.

The Fifth Circuit reaffirmed this principle in *United States v. Echols,* 542 F.2d 948 (5th Cir.), *cert. denied,* 431 U.S. 904, 97 S.Ct. 1695, 52 L.Ed.2d 387 (1977). There the court stated:

By limiting those persons who may be present before the grand jury, Rule 6(d) serves the dual purpose of safeguarding the secrecy and privacy of the grand jury proceedings and of protecting the grand jurors from the possibility of undue influence or intimidation from unauthorized persons. To effectuate these purposes, courts generally have indicated that this Rule should be strictly construed. . . In *Latham,* this Court held that the presence of an unauthorized person results in a *per se* invalidity of indictment. No showing of prejudice is required to quash an indictment secured with the presence of unauthorized persons in the grand jury room. *Id.,* 951.

Kroemer was authorized as an attorney to be in the grand jury room; as a person who had testified, he was not. Rule 6(d) does not directly deal with persons who are both witnesses and attorneys. A conclusion that Kroemer ceased to be an attorney when he testified or ceased to be a witness when he remained as an attorney with the grand jury would be artificial. He was obviously both. By limiting access to the grand jury room to those essential to its function, Rule 6 serves the goal of secrecy. Allowing an attorney otherwise authorized to remain in the grand jury room to also testify does not multiply the number of persons in the grand jury room; to the contrary, this dual role may reduce these numbers. It follows, that read in this sense, Rule 6(d) was arguably not violated. Rule 6(d) does not, however, regulate by controlling numbers of persons but regulates by denying access to all persons except those playing listed roles. The government, for example, may have many prosecutors or many witnesses, with the stipulation that only the witness under examination may remain. The government concedes, at least implicitly, that a prosecutor who also testifies thereby opens inquiry into the effect of his testimony. That inquiry conducted under the government's proffered "rule of reason" would often compel the publication of virtually all grand jury testimony. In-camera examination would be an almost impossible task. More importantly, it might be legally insufficient. It becomes apparent that a construction of Rule 6(d) consistent with its purpose will prohibit a prosecutor who testifies from remaining in the grand jury room after testifying. Otherwise stated, an attorney for the government who testifies incurs the limitation of a witness—that he can remain only during that testimony.

This is not a discussion "exquisitely poised on the brink of logomachy"[3] but an effort to resolve an ambiguity of the rule with a meaning congruent to its purpose. That congruence can only be achieved by resolving the rule's ambiguity in favor of applying to all witnesses, including attorneys for the government, Rule 6(d)'s exclusion of witnesses from the grand jury except during their testimony.

### The Standard for Prejudice

■ The government suggests that the court should draw from antitrust principles and adopt a "rule of reason" approach rather than a *per se* rule.[4] A choice between a *per se* and a rule of reason entails the balancing of the advantages and disadvantages of detailed inquiry. The argument that a court should apply a "rule of reason", that is, weigh advantages and disadvantages on a case-by-case basis contains the same fallacy as the argument that the court should examine a testifying prosecutor's testimony to see if it falls within the exceptions to DR 5. The fallacy is that detailed inquiry into the prejudice of testimony inevitably frustrates the secrecy of grand jury testimony. The premise of Rule 6 is that secrecy is essential to the functioning of a grand jury.

There is little, if any need, for a government attorney to both present a case to the grand jury and testify as a witness. Much of Kroemer's testimony could have been communicated to the grand jury as argument. If indeed his testimony was necessary, he could easily have removed himself from the case as a presenting attorney. The government can point to no justification for his taking the oath of a witness and remaining as a presenting attorney and the court can find none. On the other hand, Disciplinary Rules 5 and 9 of the Code of Professional Responsibility reflect a judgment that a testifying attorney presents at the least an appearance of evil sufficient to

---

**3.** Bickel, *The Least Dangerous Branch,* p. 58, Bobbs-Merrill (1962).

**4.** . . . there are certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use. *Northern Pac. R. Co. v. United States,* 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958).

warrant its proscription.[5] In the words of Justice Black, the practice lacks "redeeming virtue." The strong medicine of a testifying government lawyer works its will in ways not revealed by review of a transcript barren of the ambiance of the decision making place. When our "common sense", born of years of experience, tells us of prejudice, we ought not engage in a futile exercise of searching for its manifestation in print. A per se rule avoids this futility.

Criticism of the testifying lawyer is not a recent phenomenon. As stated by Justice Jackson:

> Every lawyer dislikes to take the witness stand and will do so only for grave reasons. This is partly because it is not his role; he is almost invariably a poor witness. But he steps out of professional character to do it. He regrets it; the profession discourages it. *Hickman v. Taylor,* 329 U.S. 495, 517, 67 S.Ct. 385, 396, 91 L.Ed. 451 (1947).

### Actual Prejudice

Kroemer's testimony prejudiced the defendants. The government needed testimony that defendant knew that missing documents were material. Kroemer not only supplied that testimony but did so heavily buttressed by his office. The government argues Kroemer's departure from the grand jury after testifying would not have altered any "vouching effect" of his office because of his close association with the case. The fact is that he remained and thereby exacerbated any prejudice.[6] Because of the influence of a witness who remains, Rule 6(d) forbids it. See *United States v. Echols,* 542 F.2d 948, 951, *cert. denied,* 431 U.S. 904, 97 S.Ct. 1695, 52 L.Ed.2d 387 (1977).

Defendant also urges that Kroemer's testimony was inaccurate in several respects including his description of the scope of a consent decree entered in another case. The defendant's argument of prejudice flowing from any inaccuracy is strained. That the accusations are not frivolous, however, demonstrates the wisdom of a rule barring testifying advocates from the grand jury. A definitive determination of the accuracy of the testimony and any specific prejudice could require examination of virtually the entire grand jury proceeding.

### Order

It is ironical that Kroemer's testimony may well have been motivated by a desire to be "fair" to the targets of the grand jury. Government counsel suggested that this was the purpose. The court has found nothing sinister in the government's motive in placing one of its presenting attorneys on the witness stand. Although this order faults the result of that decision, the problem is unique and the legal work of all counsel has otherwise been of commendable legal quality. This order will cause the government to return to the grand jury, but the inconvenience is small when viewed against the need for a bright clear line. And only an absolute rule has sufficient clarity and ease of administration to be administered in a manner consistent with preservation of grand jury secrecy. In the words of J. Brandeis, there is no place for a "watery eyed" enforcement of the criminal law. Unflinching vigorous enforcement is central to a well ordered society; yet, the normative value of this vigor is dissipated by government conduct, even of lofty purpose, that presents the appearance of injustice. And underlying this decision is the unspoken legal theorem that justice in fact cannot be severed from the appearance of justice.[7] The appearance of justice is not a legal standard, and with its amorphous inherently subjective meaning, ought not be.

---

5. Notions of denial of due process through abuse of the grand jury process are also implicated when the government both prosecutes and testifies against a defendant in a proceeding where that defendant is not permitted to attend or defend himself in any way. That the grand jury is a one-sided process, not an adversary procedure does not justify dual roles but is all the more reason for its avoidance. *Cf. Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927).

6. See footnote 2, *supra.*

7. ". . . justice must satisfy the appearance of justice." *Offutt v. United States,* 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954), J. Frankfurter.

Accepting that and also accepting that this case turns on a construction of a rule of criminal procedure endorsed by the congress and the judiciary, this appearance of justice—or ethos of American criminal justice—although elusive provides the stuff for interstitial cementing. This cementing has been the task here presented.

An attorney with the antitrust division of the United States Department of Justice appeared before the grand jury as both a prosecuting attorney and a witness. Once he assumed the witness stand, he could no longer continue as an advocate in that particular case. His presence in the grand jury room after testifying violated Rule 6(d). The indictment must be quashed.

It is so ORDERED.