**James Allen DWIRE, petitioner, Appellant (C4–85–1297),**

**Fred Hendrickson, petitioner, Appellant (CX–85–1420),**

**Lowell David Kramer, petitioner, Appellant (C3–85–1422),**

v.

**STATE of Minnesota, Respondent.**

**Nos. C4–85–1297, CX–85–1420 and C3–85–1422.**

Court of Appeals of Minnesota.

Feb. 18, 1986.

Review Denied April 11, 1986.

Peter Thompson, John W. Lundquist, Minneapolis, for James Allen Dwire.

Paul W. Rogosheske, South St. Paul, for Fred Hendrickson.

John L. Holahan, Jr., Edina, for Lowell David Kramer.

Hubert H. Humphrey, III, Atty. Gen., Peter Kasal, McLeod Co. Atty., Glencoe, for the State.

Heard, considered and decided by WOZ-NIAK, P.J., and FORSBERG and NIER-ENGARTEN, JJ.

## OPINION

WOZNIAK, Judge.

This is a consolidated appeal involving grand jury indictments brought against James Dwire, Fred Hendrickson and L.D. Kramer for multiple counts of theft, Minn. Stat. § 609.52 (1984), and diversion of corporate property, Minn.Stat. § 300.60 (1984). The trial court refused to dismiss the indictments. We granted discretionary review and reverse, dismissing the indictments.

## FACTS

James Dwire and Fred Hendrickson formed America Energy Farming Systems, Inc. (AEFS) in 1981 to develop, promote and market the Jerusalem artichoke as a potential source of energy, food and livestock feed. L.D. Kramer, a former television evangelist, became involved later as a consultant. The company made various sophisticated presentations to farmers extolling the virtues of the Jerusalem artichoke, which is a species of sunflower. AEFS took in millions from approximately 2,400 farmers who contracted to buy seed and grow the plant. In December 1981, the Minnesota Attorney General's office began an investigation into possible fraudulent marketing procedures. Meanwhile, AEFS was doing business in over 30 states and other states began investigations. By the fall of 1982, the Jerusalem artichoke became the subject of several negative reports. These reports commented on the impracticalities of the crop because of the great expense involved in obtaining fructose and alcohol as a by-product. Dwire and other officers of AEFS allegedly made extensive draws from AEFS assets for personal expenses or private business ventures. In March 1983, AEFS settled with the Minnesota and Iowa Attorney General's offices. AEFS agreed to pay $40,000

in fines, discontinue the marketing program they were using, and offer refunds to growers. No criminal charges were brought. With potential refunds of $18 million, AEFS filed for bankruptcy in May 1983. The bankruptcy matter is still pending.[1]

The McLeod County Attorney impaneled a grand jury to investigate AEFS, apparently in response to local residents who never got refunds. Various grand jury witnesses were subpoenaed to appear at a motel room in Marshall, Minnesota and at the McLeod County Attorney's office in Glencoe. The investigation ended in September 1984.

The McLeod County Attorney then convened a successor multi-county grand jury to continue the investigation, encompassing McLeod, Redwood, Lyon, Sibley and Renville Counties. On October 15, 1984, Linda Shamla, a paralegal from the county attorney's office, testified before the grand jury. She testified that she became involved in the investigation of AEFS in September 1982, assisting another investigator. She interviewed at least 20 witnesses (some prior to testifying before the grand jury), prepared reports concerning her activities, participated in undercover activity by posing as a potential customer, and prepared analyses of financial documents.

Following her grand jury testimony, Shamla remained in the grand jury room during the testimony of other witnesses. She marked and handed exhibits to the McLeod County Attorney. The grand jury transcript includes many references to "Miss Shamla indicating on exhibit," but Shamla testified at a subsequent hearing to reconsider a motion to dismiss the indictment that she only marked the exhibits. Appellants allege that she gestured and indicated to the grand jury how various exhibits fit into previously marked flowcharts. Shamla was present for the testimony of seven grand jury witnesses.[2]

1. In *Cessna Finance Corporation v. Dwire,* 377 N.W.2d 45 (Minn.Ct.App.1985), this court upheld the grant of summary judgment against Dwire in favor of the holder of a personal guarantee contract in a lawsuit involving AEFS' purchase of an airplane.

2. The state contends Shamla's presence was documented in the record only during the testimony of two witnesses, Becky Sorbel and Robert Wilson. However, five witnesses testified between those two witnesses. While Shamla could not recall how many witnesses testified in

Indictments were returned against Dwire, Hendrickson, and Kramer for theft and diversion of corporate property. The trial court denied their motion for dismissal based on the unauthorized presence of Shamla in the grand jury room and denied a later motion for reconsideration. We granted discretionary review.

## ISSUES

1. Does the presence of an unauthorized person in the grand jury room require dismissal of an indictment?

2. Was Shamla an unauthorized person in the grand jury room?

## ANALYSIS

### I.

Minn.Stat. § 628.63 (1984) provides, in part:

> The persons specified in Rule 18.04 of the rules of criminal procedure may, subject to the conditions specified in that rule, be present before the grand jury when it is in session, but no person other than the jurors may be present while the grand jury is deliberating or voting.

Minn.R.Crim.P. 18.04 provides:

> *Attorneys for the State, the witness under examination, interpreters when needed, and for the purpose of recording the evidence, a reporter or operator of a recording instrument may be present while the grand jury is in session, but no person other than the jurors may be present while the grand jury is deliberating or voting.* Upon order of court and a showing of necessity for the purpose of security, a designated peace officer may be present while a specified witness is testifying. If a witness before the grand jury so requests and has effectively waived his immunity from self-incrimination, his attorney may be present while the witness is testifying, provided the attorney is then and there available for that purpose or his presence can be secured without unreasonable delay in the grand jury proceedings. The attorney shall not be permitted to participate in the grand jury proceedings except to advise and consult with the witness while he is testifying. (Emphasis added.)

Accordingly, there is specific authority for the dismissal of an indictment based on the presence of an unauthorized person during the presentation of evidence to the grand jury. Minn.Stat. § 630.18 (1984); Minn.R.Crim.P. 17.06, subd. 2(1)(f).

The sparse case law in Minnesota is of the view that presence of an unauthorized person requires dismissal of an indictment without a need to show prejudice to the accused. *State v. Ernster*, 147 Minn. 81, 85–86, 179 N.W. 640, 642 (1920); *State v. Slocum*, 111 Minn. 328, 330–31, 126 N.W. 1096, 1096–97 (1910). In *Slocum*, a third party was present in the grand jury room during the testimony of a grand jury witness. The supreme court stated:

> [I]t clearly appears that [the third party] was present during the examination of the witness Rhoda. Section 5338 provides that an indictment shall be set aside by the court (subdivision 3) "whenever a person shall have been permitted to be present at the session of the grand jury while the charge embraced in the indictment was under consideration * *."
> * * * [I]t does not follow that any other person may be present at such time. A case is under consideration before the grand jury, within the meaning of section 5338, when witnesses are being examined. Hence [the third party] was present in the grand jury room with the grand jurors during the time they had the matter of this indictment under consideration.
>
> The facts stated were uncontradicted, and the action of the grand jury was unwarranted, contrary to law, cannot be upheld, and the indictment should have been quashed.

*Id.*, 111 Minn. at 330–31, 126 N.W. at 1096–97.

---

her presence, she did recall Ann Rutherford, who was the fourth witness to testify after Sorbel. Shamla did recall that she remained in the grand jury room continuously during the afternoon. The fair inference is that she was present during the testimony of at least seven witnesses.

In *Ernster,* the court also dealt with the presence of unauthorized persons, a committee of three appointed by a previous grand jury. The court's discussion included the following:

> Here evidence, illegal or hearsay, to be sure, was given the grand jury, and *the case was discussed when persons not authorized to be present were present.* The minds of the jury must have considered and laid hold of the case when they heard what purported to be the facts or evidence in respect to it. On the testimony above referred to we think it clearly appears that *the indictment should have been quashed.*
>
> The common law respecting grand jury functions, as supplemented by our statutory enactments, clearly intends that *there shall be no star chamber proceedings at which persons may come,* either by delegations or singly, to advise or urge action on the part of the jury whether to indict or to find a no bill. It is supposed that witnesses only shall appear, one at a time, and give competent evidence, and upon evidence so given, and that alone, the jury are to determine whether a person should be accused of crime. If those interested in prosecuting may send a delegation to the grand jury to induce the finding of a bill, so may the criminal send his delegation and lawyer to persuade that no bill be found. *The grand jury is supposed to be a fearless and impartial investigator of crime, and to the more fully accomplish this purpose the law seeks to provide against every influence of outsiders, and specifies that the mere presence of an unauthorized person when a witness testifies, or when the case is discussed, or the vote taken, is fatal to the indictment.*

*Ernster.* 147 Minn. at 85, 179 N.W. at 641–42.

This view is also the uniform view of the federal courts which have interpreted Fed. R.Crim.P. 6(d), the federal counterpart and the model for Minn.R.Crim.P. 18.04. *Latham v. United States,* 226 F. 420, 424 (5th Cir.1915); *United States v. Virginia-Carolina Chemical Co.,* 163 F. 66, 75–76 (M.D. Tenn.1908); *United States v. Edgerton,* 80 F. 374, 375–76 (D.Mont.1897); *United States v. Pignatiello,* 582 F.Supp. 251, 254–55 (D.Colo.1984); *United States v. Gold,* 470 F.Supp. 1336, 1356 (N.D.Ill.1979); *United States v. Treadway,* 445 F.Supp. 959, 962–63 (N.D.Tex.1978); *United States v. Phillips Petroleum Co.,* 435 F.Supp. 610, 618 (N.D.Okla.1977); *United States v. Braniff Airways, Inc.,* 428 F.Supp. 579, 582–83 (W.D.Tex.1977); *United States v. Daneals,* 370 F.Supp. 1289, 1296 (W.D.N.Y. 1974); *United States v. Isaacs,* 347 F.Supp. 743, 748–49 (N.D.Ill.1972); *United States v. Bowdach,* 324 F.Supp. 123, 124 (S.D.Fla. 1971); *United States v. Borys,* 169 F.Supp. 366, 367 (D.Alaska 1959); *United States v. Carper,* 116 F.Supp. 817, 820 (D.D.C.1953). In *United States v. Pignatiello, supra,* the district court concluded that "a review of all of these cases reinforces the conclusion that the only effective sanction for a violation of Rule 6(d) is dismissal without any further inquiry into the effects of that violation." 582 F.Supp. at 255.

The state law outside Minnesota is decidedly mixed. *See* Annot., 23 A.L.R. 4th 397 (1983 and 1985 Supp.). The majority view is that the mere presence of an unauthorized person in the grand jury room, absent a showing of prejudice to the accused, is not sufficient to dismiss the indictment. However, the cases sustaining the majority view are for the most part from jurisdictions which have broadly written statutes or no statutory direction at all. *State v. Revere,* 232 La. 183, 94 So.2d 25, 31–32 (1957).

The rationale for the "per se" rule of dismissal followed in Minnesota, the federal courts, and many state courts was enunciated in *Commonwealth v. Pezzano,* 387 Mass. 69, 438 N.E.2d 841 (1982):

> This principle is based "upon the fundamental conception that proceedings before the grand jury must be in secret." This rule of secrecy imposed on the hearings and deliberations of the grand jury derives from two significant considerations. The first is a decision to "save individuals from notoriety unless proba-

ble cause is found against them and an indictment is returned and disclosed." The second, of special significance to the matter before us, is to shield grand jury proceedings from any outside influences having the potential to "distort their investigatory or accusatory functions." Such protection embraces jurors and witnesses alike, and is designed primarily to prevent attempts to overawe them by, among other things, the presence of numbers of prosecution witnesses while evidence is being taken.

*Id,* 387 Mass. at 73, 438 N.E.2d at 844 (citations omitted).

Underlying this is the requirement that the grand jury be legally constituted and unbiased. *See Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956); *United States v. Samango,* 450 F.Supp. 1097, 1102 (D.Hawaii 1978), *aff'd,* 607 F.2d 877 (9th Cir.1979). A grand jury is to serve as "a protector of citizens against arbitrary and oppressive governmental action," *United States v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974), and "unfounded criminal prosecutions," *Branzburg v. Hayes,* 408 U.S. 665, 686–87, 92 S.Ct. 2646, 2659, 33 L.Ed.2d 626 (1972). *See also State v. Iosue,* 220 Minn. 283, 292–93, 19 N.W.2d 735, 739–40 (1945) (adoption of the grand jury system in this country "was founded upon the theory not only of bringing wrongdoers to justice, but also of providing to one accused protection against unfounded and unreal accusations * * * ").

■ To require a defendant to show prejudice "would be to undermine the purpose, effectiveness and value of the Criminal Rules by judicial legislation which, in effect, would be saying that the Rules do not mean what they clearly and unequivocally state." *United States v. Carper,* 116 F.Supp. 817, 820 (D.D.C.1953). A detailed inquiry into prejudice inevitably frustrates the secrecy of grand jury testimony. *United States v. Treadway,* 445 F.Supp. 959, 963 (N.D.Tex.1978). As one court rhetorically asked over a hundred years ago, "[i]f the presence of an unauthorized person in the grand jury room may be excused, who will set bounds to the abuse to follow such

a breach of the safeguards which surround the grand jury?" *United States v. Edgerton,* 80 F. 374, 375 (D.Mont.1897).

■ We reaffirm that presence of an unauthorized person in the grand jury room taints an indictment and no showing of prejudice is required to dismiss the indictment. The trial court here agreed with this statement of law, but ruled that Shamla was an authorized person.

## II.

The rules explicitly list who is authorized to be present while the grand jury is in session. "Attorneys for the State, the witness under examination, interpreters when needed, and * * * a reporter * * *." Minn.R.Crim.P. 18.04.

The State contends that Shamla, a paralegal from the county attorney's office, is an "extension" of the county attorney and is authorized to be present. The State relies on *United States v. Echols,* 542 F.2d 948 (5th Cir.1976), *cert. denied,* 431 U.S. 904, 97 S.Ct. 1695, 52 L.Ed.2d 387 (1977). In *Echols,* the court held that a movie projectionist sworn as a witness before the grand jury was a witness under examination and hence authorized to be present to show allegedly obscene films to the grand jury. *Id.* at 952. *Echols* does not stand for the proposition that a movie projectionist is an authorized person.

■ Here, Shamla testified before the grand jury; she was obviously an important witness. She had performed extensive investigatory work in the AEFS matter. She not only interviewed several witnesses (some prior to testifying) and prepared memoranda and charts, but she attended AEFS sales presentations in an undercover capacity. Her activities were essentially those of a law enforcement investigator, thought to have a strong potential for exerting influence over grand jurors or grand jury witnesses. Numerous cases have held that investigators, law clerks, and police officers are unauthorized persons. *Moseley v. State,* 256 Ark. 716, 719, 510 S.W.2d 298, 300 (1974); *State v. Pacific Concrete*

*and Rock Co.,* 57 Haw. 574, 575–76, 560 P.2d 1309, 1310 (1977); *State v. Bowman,* 423 N.E.2d 605, 606 (Ind.1981); *State v. Revere,* 232 La. 184, 199, 94 So.2d 25, 31 (1957); *Commonwealth v. Pezzano,* 387 Mass. 69, 72–75, 438 N.E.2d 841, 843–45 (1982); *Davis v. Traub,* 90 N.M. 498, 500–501, 565 P.2d 1015, 1017–18 (1977).

Shamla was not an attorney for the State; she was not even an attorney. The rules do not provide for "extensions" of State attorneys, as argued by the State, even if used to assist in the grand jury room. The limitation on who may be present

> serves the dual purpose of safeguarding the secrecy and privacy of the grand jury proceedings and of protecting the grand jurors from the possibility of undue influence or intimidation from unauthorized persons.

*Echols,* 542 F.2d at 951. If we accepted the State's argument, a veritable Pandora's box would open up. Who else would be an "extension" of the State attorneys? Every paralegal? What about student law clerks? Or secretaries? The rule is specific to avoid these areas of imprecision. The rule is clear and precise; there is no need to graft onto it a judicial cloud of confusion. The county attorney here should either have become familiar with the exhibits personally or have had an assistant county attorney render assistance in performing the necessary functions.

Moreover, Shamla was unauthorized because she had previously testified before the grand jury as a witness. *See Treadway,* 445 F.Supp. at 962; *United States v. Mechanik,* 735 F.2d 136, 139–40 (4th Cir. 1984), *aff'd,* 756 F.2d 994 (1985). *See generally State v. Hansen,* 215 N.W.2d 249, 252–53 (Iowa 1974) (joint appearance of two grand jury witnesses in the grand jury room required dismissal of indictments without a showing of prejudice). In fact, Shamla was an advocate witness, unlike many of the other grand jury witnesses who testified.

In *Treadway,* a government attorney was sworn as a witness and testified before the grand jury. After testifying, he re-

mained in the grand jury room as a prosecutor. The federal district court ruled that, while the attorney was authorized as a witness and as an attorney, he could not fulfill dual roles. The court held that the rules of criminal procedure prohibit a prosecutor who testifies from remaining in the grand jury room after testifying. 445 F.Supp. at 961. This principle is even more applicable here since Shamla was not an attorney.

## DECISION

The trial court should have dismissed the grand jury indictments because of the presence of an unauthorized person in the grand jury room. Because of our decision, we need not discuss the allegations of grand jury abuse in the original grand jury panel.

Reversed.

FORSBERG, Judge, concurring specially:

I concur but would respectfully suggest that the cases relied upon by the majority, *State v. Ernster,* 147 Minn. 81, 179 N.W. 640 (1920) and *State v. Slocum,* 111 Minn. 328, 126 N.W. 1096 (1910), be overruled. These cases were decided prior to the time when grand jury proceedings were transcribed. Without a transcript there was no way to determine whether the unauthorized person was merely present or was acting in some way to prejudice the accused. Therefore, a per se rule of dismissal was required any time an unauthorized person was even present during grand jury proceedings.

Now the rules require a transcript of all testimony taken before a grand jury. Rule 18.05 requires that a verbatim record shall be made by a reporter or recording instrument of (1) the evidence taken before the grand jury, (2) of all statements made to the grand jury, and (3) all *events* occurring while a witness is before the grand jury. Rule 18.05, subd. 1, Minn.R.Crim.P. These requirements are adequate safeguards with which to protect the grand jury process. Shamla's continued presence in no

way jeopardized the secrecy or privacy of the proceedings. The real concern about unauthorized persons in a grand jury proceeding is that the unauthorized person may "advise or urge action on the part of the jury" whether or not to return an indictment, or otherwise influence the jurors. *Ernster*, 147 Minn. at 85, 179 N.W. at 641. Reference to the verbatim transcript would reveal with sufficient accuracy whether something was said or done by the unauthorized person which prejudiced the accused. In light of the time, energy, and expense involved in the grand jury process, this seems to be a more practical solution than a per se rule requiring dismissal.