UNITED STATES of America

v.

Jerome Otto LILL, Mark Douglas Chadwick, Shahbaz Shane Zarintash, Marshall Mechanik, Steven Henry Riddle.

Crim. A. Nos. 79–20045, 79–20056.

United States District Court,
S. D. West Virginia,
Charleston Division.

Aug. 15, 1980.

Robert B. King, U. S. Atty., Rebecca A. Betts, J. Timothy DiPiero, Asst. U. S. Attys., Charleston, W. Va., for plaintiff.

Richard G. Chosid, Bloomfield Hills, Mich., for Lill.

W. Dale Greene, Charleston, W. Va., for Chadwick.

Michael B. Pollack, New York, for Zarintash.

D. J. Esposito, Richmond, Va., Alan Silber, Newark, N.J., for Mechanik.

Edwin F. Kagin, Jr., Louisville, Ky., for Riddle.

## MEMORANDUM ORDER

COPENHAVER, District Judge.

This matter is before the court on the defendants' motion to dismiss by virtue of a violation of Rule 6(d) of the Federal Rules of Criminal Procedure in that two government agents appeared simultaneously and testified interchangeably as witnesses before the grand jury returning the second of two indictments in this case. This issue was reserved from prior rulings by the court.

The procedural history of defendants' motion is as follows: The first of two indictments in this case was returned on June 14, 1979. In his omnibus motion filed on July 6, 1979, defendant Zarintash, asserting the possibility of a violation of Rule 6(d), sought a list of all persons appearing before the grand jury. All defendants thereafter filed motions adopting the various pretrial motions filed by each defendant. A second or superceding indictment was returned on August 10, 1979. Defendants then moved to have all pre-trial motions made applicable to the August 10th indictment. By order entered January 4, 1980, Judge Dennis R. Knapp denied all pre-trial motions which had not been previously ruled upon. On several occasions prior to trial defendants unsuccessfully sought disclosure of the transcripts of the grand jury testimony in connection with various pre-trial motions.

Trial of seven of the twelve named defendants commenced under the superceding indictment on February 19, 1980. On February 28, 1980, defendants received a partial transcript of the grand jury testimony of Drug Enforcement Administration Agent Jerry Rinehart pursuant to 18 U.S.C. § 3500 which revealed that Agent Rinehart testified before the grand jury simultaneously with DEA Agent Randolph James just prior to the return of the superceding indictment. The defendants thereupon moved for dismissal of the indictment on the basis of a violation of Rule 6(d). By order entered on March 14, 1980, defendants' motion to dismiss and their alternative motion to stay the trial pending appeal was denied by Judge Knapp. While the trial continued, defendants filed a Notice of Appeal and petitioned Circuit Judge James M. Sprouse on March 19, 1980, for a stay pending appeal. The stay was denied by order entered on March 25, 1980. On April 10, 1980, a panel of the United States Court of Appeals for the Fourth Circuit, consisting of Circuit Judges Hall, Phillips and Sprouse, denied defendants' petition for a writ of mandamus and for a writ of prohibition.

Thereafter, Judge Knapp was unexpectedly hospitalized. On April 28, 1980, he directed that this action be transferred to the docket of the undersigned judge. On May 22, 1980, defendants moved for rehearing of their motion to dismiss the indictment on the ground of unauthorized appearances before the grand jury. The court took that motion under advisement while the trial continued in progress.

When the trial concluded July 3, 1980, two of the seven defendants on trial were acquitted. Of the remaining five, named in the caption above, the jury was unable to reach a verdict as to Mark Chadwick. Jerome Lill was found guilty on counts one, two and four, Marshall Mechanik was found guilty on counts one and ten, Steven Riddle was found guilty on count one, and Shahbaz Zarintash was found guilty on count one.

## I.

The event giving rise to the two indictments and subsequent jury trial in this criminal action was the crash landing of a DC–6 aircraft laden with some ten tons of marijuana at the Kanawha County Airport, Charleston, West Virginia, at 12:53 a. m., on June 6, 1979. On June 12, 1979, a federal grand jury convened to investigate the crash, and on June 14, 1980, after having heard approximately thirty witnesses, the first of two indictments was returned (No.

79–20045 CH).[1] The June 14th indictment consisted of one conspiracy count and seven substantive counts and named nine defendants.[2]

On July 31, August 2, 9 and 10, the same grand jury received further testimony regarding the June 6, 1979, DC–6 crash. On August 10, 1979, the grand jury returned a second, superceding indictment consisting of one conspiracy count and eleven substantive counts and adding three defendants (No. 79–20056).[3] The conspiracy count in the August 10th indictment was amended and expanded as set forth, *infra*, at 59–60.[4]

As noted, the trial of seven of the twelve defendants named in the August 10th indictment commenced on February 19, 1980.[5] On February 28, 1980, Agent Rinehart testified on behalf of the government, at which time the government furnished defendants with a portion of the transcript of Agent Rinehart's grand jury testimony as § 3500 material. The transcript disclosed that on August 10, 1979, Agent Rinehart was placed under oath simultaneously with fellow-DEA Agent James. The agents were sworn immediately prior to the reading of portions of the proposed superceding indictment to the grand jury by Assistant United States Attorney Hoffman. Questions were then propounded to Agents Rinehart and James by United States Attorney King, Assistant United States Attorneys Hoffman and DiPiero, and by the grand jurors.

More specifically, the agents' joint testimony commenced with Agent Rinehart who testified regarding changes made in the first eight paragraphs of the conspiracy count in the proposed superceding indictment. Agent James interjected once at the conclusion of this phase of the agents' joint testimony in response to a juror's question directed to Agent Rinehart regarding the flight experience of defendants (and pilots) Anderson and Seesing:

JUROR: You don't know how many [flight] hours or anything like that?

MR. RINEHART: No.

MR. JAMES: The way you would determine their hours is from their last medical. I think David Seesing was the pilot who probably had the best credentials for flying. He had ratings in addition to what Anderson had.

I believe his hours of flight time were quite a bit more than Anderson's. I would have to check the records on that to make sure.

But I think his records outweighed Anderson's, or his credentials.

MR. HOFFMAN: Agent Rinehart, is there anything else you would like to clear up before we go into the overt acts?

MR. RINEHART: Okay.

MR. HOFFMAN: Let's go through the overt acts beginning with paragraph 9. The overt acts will show how it was part of the conspiracy, the charges in paragraphs 1 through 8.

(Tr. 39).

Thereafter Agents Rinehart and James generally alternated their testimony with respect to each of the overt acts alleged in paragraph nine of the proposed superceding indictment. On several occasions, Assistant United States Attorney Hoffman interjected to refer the jurors to the substantive

---

1. The June 14, 1980, indictment was omitted from publication at the suggestion of the court.

2. The nine defendants are: Breck Dana Anderson, David Thomas Seesing, Jerome Otto Lill, Gregory Louis McCafferty, Mark Douglas Chadwick, Shahbaz Shane Zarintash, Marshall Mechanik, Leon Jacques Gast, and Steven Henry Riddle.

3. The three additional defendants are: James F. Chadwick, Craig Bruce McGilvray, and Russell Kook.

4. Pursuant to the court's rulings on the government's motion to dismiss filed at the conclusion of its case in chief and defendants' motions to strike and for judgment of acquittal filed at the close of the evidence, the August 10, 1979, indictment was significantly redacted. The August 10, 1979 and the redacted indictments were omitted from publication at the suggestion of the court.

5. Defendants Anderson, Seesing, Gast and McCafferty entered pleas of guilty prior to the commencement of the trial. Defendant McGilvray has not been found and remains at large.

count in the indictment which corresponded to the testimony they were about to receive from Agent Rinehart or James regarding an overt act. The following excerpt is representative of the nature of the remainder of the Rinehart/James joint testimony:

> MR. HOFFMAN: I believe, Agent Rinehart, that an analysis of the telephone tolls of the Sanderson number in Daytona Beach reveals numerous calls by and between various of the defendants charged in the indictment, is that correct?
>
> MR. RINEHART: That's correct. We have calls from the Sanderson number, where Kook and Powers reside, to several of the defendants alleged in the indictment.
>
> MR. HOFFMAN: Go ahead with (c).
>
> MR. JAMES: "On or about the 20th day of April, 1979, defendant Gregory Louis McCafferty, using the name George T. Markos, rented a Ryder rental truck in Cleveland, Ohio."
>
> As you are aware, I traveled to Cleveland, interviewed people at the Ryder Truck Rental Company's district office on Brook Park Road in Cleveland, and, in reviewing their records for trucks rented to a George T. Markos, we determined that a George T. Markos had rented trucks, or a truck, a Ryder truck, from them on April 20, 1979.
>
> There was a rental agreement in file reflecting the rental of a truck on that date. An employee of that company who rented the truck to Mr. Markos identified a photograph which was presented in what we call a photo spread, a series of photos, identified a photo of Gregory McCafferty as being the individual who had come in and rented the truck using the name George Markos.
>
> MR. RINEHART: If you will notice from that overt act, then you will have a time period of April 23 through April 28 where there are several telephone calls made shortly after the rental of that truck.
>
> Overt act (e) reads, "On or about the 23rd day of April, 1979, a phone call was made from Fern Creek, Kentucky, to Daytona Beach, Florida."

> MR. JAMES: There is a second rental of a truck in overt act (d) which I will cover before we get to the phone calls . . . .

(Tr. 44–46). The bulk of their testimony found Agent James relating information he had obtained respecting Ryder truck rentals and travel, as well as James Chadwick's alleged involvement, while Agent Rinehart undertook to weave this and other information into the network of telephone calls being summarized for the grand jury by Rinehart. The complete transcript of the grand jury proceedings at which Agents Rinehart and James were present jointly, apart from the reading of the indictment by the Assistant United States Attorney, is some sixty-two pages in length.

## II.

Rule 6(d) of the Federal Rules of Criminal Procedure delineates who may be present before a federal grand jury:

> (d) Who May Be Present. Attorneys for the government, the witness under examination, interpreters when needed and, for the purpose of taking the evidence, a stenographer or operator of a recording device may be present while the grand jury is in session, but no person other than the jurors may be present while the grand jury is deliberating or voting.

Defendants, contending that the rule has consistently been strictly construed, insist that the presence of more than one witness before the grand jury at one time constitutes an appearance by an unauthorized person in violation of the rule. This, defendants claim, requires the dismissal of the indictment. The government asserts that the simultaneous use of two witnesses was militated by the complexity of the indictment and the underlying investigation so as to enable the grand jury to hear a summary of the indictment in a logical and coherent fashion. The government therefore urges a pragmatic construction of Rule 6(d) and, in the alternative, an inquiry into whether any actual prejudice flowed from the Rinehart/James joint testimony.

The court will consider whether the Rinehart/James joint testimony constitutes a violation of Rule 6(d) and if so, the proper remedy for such violation.

### III.

### A.

Guidance in the proper construction of the phrase "witness under examination" as used in Rule 6(d) can be found in the rule's somewhat sparse history.[6] As excerpted in *United States v. Carper*, 116 F.Supp. 817 (D.D.C.1953), wherein three deputy marshals were present during a witness' testimony before a grand jury, the proceedings of The Institute on Federal Rules of Criminal Procedure provides the following insight into the drafter's intent:

> The minutes of the proceedings show the following discussion of Rule 6(d) by the Honorable George Z. Medalie, then Associate Judge of the New York State Court of Appeals and a member of the Supreme Court Advisory Committee:
>
> > "When I first heard of Federal criminal procedure, I found that it was the practice to try to get rid of indictments by proving that someone was in the grand jury who had no right to be there, and usually it was some deputy marshal or somebody else, some unauthorized person, and then the great to-do was how to get a person authorized. One of the ways to get a stenographer authorized in those days was to have him sworn in as Assistant United States Attorney, when he really was nothing of the kind.
> >
> > "Now, cases have come up on motions to quash because of unauthorized persons in the grand jury room, so we drew up a little list as to who is authorized. That is provided for. We say 'attorneys for the government'—the phrase 'attorney for the government' is defined and limited in Rule 27; 'the witness under examination'—no one has ever moved to dismiss on account of his presence; 'interpreters when

needed.' Now, here is a little touch which we picked up because of the wide geographic distribution of the membership of our committee. We didn't say 'an interpreter.' We said 'interpreters.' [We discovered that in some of the Southwestern districts it is at times necessary to have two interpreters in the grand jury room, for example, one who knows the Indian language and Spanish, but doesn't know any English—fortunately knows the Indian language, the particular Indian dialect—and another who knows Spanish. So we said 'interpreters' instead of 'interpreter.']"

116 F.Supp. at 819–20, *citing* New York University School of Law Institute–Proceedings, VI *Federal Rules of Criminal Procedure With Notes and Institute Proceedings* at 153–54 (1946) (footnote and emphasis omitted) (bracketed material deleted in court's excerpt).

As implicitly recognized in Judge Medalie's comments, the rule speaks of "witness" in the singular whereas the term "interpreters" was deliberately cast in the plural. *See also* Dession, *The New Federal Rules of Criminal Procedure: II*, 56 Yale L.J. 197, 202–03 (1947). This construction is consistent with the common law practice as set forth in the treatise *History of the Criminal Law of England*:

> The grand jury sit by themselves and hear the witnesses one at a time, no one else being present except the solicitor for the prosecutor if he is admitted.

J. Stephen, 1 *History of the Criminal Law of England* at 274 (1883); *see also United States v. Carper*, 116 F.Supp. 817 (D.D.C. 1953); *People v. Minet*, 296 N.Y. 315, 73 N.E.2d 529 (1947); L. Orfield, 1 *Criminal Procedure Under the Federal Rules* § 6:73 (1966).

Case law on the question of whether two witnesses may appear simultaneously before a federal grand jury, though scant, is nearly uniform in its adherence to the common law practice. In *United States v. Edgerton*, 80 F. 374 (D.Mont.1897), the presence

---

**6.** The Federal Rules of Criminal Procedure became effective on March 21, 1946.

of an expert witness who remained in the grand jury room after his testimony and observed and questioned subsequent witnesses was held to be violative of accepted grand jury practice, therefore requiring dismissal of the indictment. Similarly, in *United States v. Bowdach*, 324 F.Supp. 123 (S.D.Fla.1971), it was held that the presence of a witness who played audio tapes for the purpose of refreshing the memory of other witnesses constituted a violation of Rule 6(d). It has likewise been held that Rule 6(d) is violated where an attorney for the government testifies before the grand jury and then, having resumed his prosecutorial role, remains in the grand jury room in the presence of other witnesses. *See United States v. Gold*, 470 F.Supp. 1336, 1351 (N.D. Ill.1979); *United States v. Treadway*, 445 F.Supp. 959, 962 (N.D.Tex.1978); *contra*, however, is *United States v. Birdman*, 602 F.2d 547 (3rd Cir. 1979) (holding that the attorney's presence is authorized under Rule 6(d) as that of a "witness" on the one hand and as an "attorney for the government" on the other).

The government's position that the Rinehart/James joint testimony does not constitute a violation of Rule 6(d) is premised upon the rationale that practical considerations such as the manner and mode in which evidence may be most effectively presented to the grand jury are relevant factors in construing the limits of the rule. The government cites the following excerpt from *United States v. Echols*, 542 F.2d 948 (5th Cir. 1976), in support of its position:

> [W]e read the rule as accommodating the practical exigency of making all relevant information available to the grand jury in a meaningful and understandable manner.

542 F.2d at 952.

In *Echols*, a Federal Bureau of Investigation agent appeared as a witness before a grand jury for the sole purpose of operating a cinematic projector. The court found the agent to be a "witness under examination" and thus an authorized person under Rule 6(d), holding that:

Logic dictates that, when it is necessary for the grand jury to examine evidence which can only be presented through the use of complicated machinery, Rule 6(d) must encompass those persons with the requisite skills to operate such machines and to give testimony concerning their operations. To interpret this Rule otherwise would insulate from the grand jury the meaningful production of evidence.

542 F.2d at 952. This reading of the rule comports with the ever increasing functions witnesses may serve in both the grand jury and petit jury settings. The dictum relied upon by the government, however, does not support the conclusion that the rule authorizes joint testimony by two or more witnesses. At no time was the witness/projectionist in *Echols* present simultaneously with another witness. *Echols* merely recognizes the nontestimonial functions a witness may serve when, for example, audio or visual evidence can only be presented by persons skilled in the use of audio and visual equipment.

## B.

■ There are essentially two public policies ascribed by Rule 6(d). The first is that grand jury proceedings should be private and, to the greatest degree possible, secret. In *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958), the Court identified five justifications which underlie the need for grand jury secrecy:

(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation,

and from the expense of standing trial where there was no probability of guilt. 356 U.S. at 681 n.6, 78 S.Ct. at 986 n.6, *citing United States v. Rose,* 215 F.2d 617, 628–29 (3rd Cir. 1954); *see also United States v. Treadway, supra* at 163.

This policy is embodied in Rule 6(e) which imposes an obligation of secrecy upon all persons identified in Rule 6(d) with the traditional exception of "the witness under examination."[7] *See* New York University School of Law Institute–Proceedings, VI *Federal Rules of Criminal Procedure With Notes and Institute Proceedings* at 154–55 (1946). Rule 6(e) further provides that upon proper notice to the court, grand jury materials may be disclosed to:

(i) an attorney for the government for use in the performance of such attorney's duty; and

(ii) such government personnel as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law.

Fed.R.Crim.Proc. 6(e)(3)(A)(i)–(ii).

▮ In the case at bar, grand jury materials were provided to Agents Rinehart and James under the authority of Rule 6(e)(3)(A)(ii). The obligation of secrecy imposed upon the agents with respect to the materials, however, did not further extend to their joint appearances as witnesses inasmuch as Rule 6(e) provides that "[n]o obligation of secrecy may be imposed upon any person except in accordance with this rule." *See* note 7, *supra; see also* L. Orfield, 1 *Criminal Procedure Under the Federal Rules* § 6:119 (1966).

Realistically, however, the secrecy of the grand jury proceedings was not threatened by virtue of the joint appearance in this case. Rather, concern here focuses on the second public policy implicit in Rule 6(d) which serves to guard against undue influence upon grand jury witnesses or the grand jurors:

[W]itnesses and grand jurors sitting without the protection of a presiding justice [must] be free from the risk of intimidation attendant upon the presence of numbers of prosecution witnesses, particularly police witnesses, in the grand jury.

*United States v. Kazonis,* 391 F.Supp. 804, 805 (D.Mass.1975); *see also United States v. Bowdach, supra* at 124. In *People v. Minet,* 296 N.Y. 315, 73 N.E.2d 529 (1947), the danger of permitting two witnesses to appear simultaneously before a grand jury was noted:

There may have been prior expressions or conversations between the two witnesses which the one then giving testimony might well hesitate to repudiate or modify in the presence of others.

. . . .

Such presence might also improperly suppress as well as elicit testimony . . . .

73 N.E.2d at 532. *Cf. United States v. Virginia Erection Corp.,* 335 F.2d 868, 872 (4th Cir. 1964).

▮ In the case at bar, the joint witness approach tended to be detrimental to the grand jurors' ability to assess the credibility and personal knowledge of Agents Rinehart and James and to contrast and compare the substantive evidence elicited through their testimony. Throughout their joint testimony, the agents consistently couched their remarks in terms of "we know," "we believe" and "we inquired." In several instances, an agent referred back to and restated the other agent's prior testimony. In addition, on several occasions an assistant United States attorney elaborated on

---

7. Rule 6(e)(2) of the Federal Rules of Criminal Procedure provides:

General Rule of Secrecy.—A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.

the testimony of the agents, using the collective "we."[8]

The added persuasiveness resulting from the collective presentation of the agents' testimony, though difficult to assess, would not have existed had each agent testified individually, inasmuch as they would have been unable instantly to supplement each other's testimony. In assessing whether their joint testimony was unduly persuasive, it must also be noted that they were government agents who had either been previously sworn as an agent of the grand jury or had previously testified individually before the grand jury, were privy to grand jury materials, and were in command of the entire investigation of the June 6, 1979, DC-6 plane crash. The court further observes that Agent James is Agent Rinehart's superior officer within the Charleston, West Virginia, office of the Drug Enforcement Administration. *See United States v. Bowdach, supra* at 124 ("The potential for undue influence ... is made greater by the fact that the unauthorized person ... was a government agent who possessed personal knowledge of the evidence being presented.").

### C.

It is, of course, not possible to determine with certainty whether the Rinehart/James joint appearance unduly emphasized their testimony and insulated them from the critical eye generally cast upon a witness testifying individually before a jury. While the joint testimony approach was doubtless convenient to the government, it was both improper and unnecessary. Although their sworn remarks touched upon and served to integrate the whole of the superceding indictment as presented to the grand jury, their testimony could have been presented separately without impairing the ability of the government to present its case fully, fairly and nearly as expeditiously. As earlier noted, the overt acts contained in paragraph nine of the August 10th indictment were used as a blueprint for the agents' joint testimony. The same structured approach could have been employed had each agent testified individually, thereby permitting the grand jurors to better assess the personal knowledge and credibility of the two agents. Indeed, at the time of the first indictment Agent James testified individually before the grand jury on June 14, 1979, for the stated purpose, in part, of answering any questions the jurors had about the proposed June 14th indictment. As with the joint August 10th testimony, Agent James' June 14, 1979, testimony immediately preceded the grand jury's deliberations and ultimate vote in favor of the return of the June 14th indictment.

In short, the joint witness approach utilized by the government with respect to Agents Rinehart and James served no legitimate purpose and, when contrasted with the traditional one witness method of eliciting testimony, tended to inhibit the effective evaluation of the agents' testimony. The rationale for the sequestration of witnesses at trial is equally applicable in this context: "[T]o prevent the possibility of one witness shaping his testimony to match that given by the other witnesses ...." *United States v. Leggett*, 326 F.2d 613 (4th Cir. 1964), *cert. denied*, 377 U.S. 955, 84 S.Ct. 1633, 12 L.Ed.2d 499 (1964).

A further observation. The Advisory Committee on Criminal Rules' lone comment upon Rule 6(d) as originally enacted was that it "generally continues existing law." The court's inability to discover a single published decision in either the grand jury, civil trial or criminal trial contexts where two witnesses were permitted to testify contemporaneously is persuasive proof that the government's construction of the rule is contrary both to the rule as read on its face and to the accepted common law practice.

---

**8.** While the substantive comments of the assistant United States attorney do not, standing alone, provide a basis for dismissal of the indictment, *see United States v. Bruzgo*, 373 F.2d 383 (3rd Cir. 1967), they are relevant to a full understanding of the impact of the Rinehart/James joint testimony.

The court accordingly holds that the joint testimony of Agents Rinehart and James resulted in the presence of an unauthorized person before the grand jury and was, therefore, contrary to and in violation of Rule 6(d). The court turns next to consider the consequences of such a violation.

## IV.

While there is a split of authority among the states as to whether the presence of an unauthorized person before a grand jury is *per se* prejudicial, thereby requiring dismissal of the indictment,[9] federal decisions which have addressed the point are, in the main, uniform in adhering to the *per se* rule. *See Latham v. United States*, 226 F. 420, 424 (5th Cir. 1915); *United States v. Treadway*, 445 F.Supp. 959, 962–63 (N.D. Tex.1978); *United States v. Phillips Petroleum Co.*, 435 F.Supp. 610, 618 (W.D.Okla. 1977); *United States v. Braniff Airways, Inc.*, 428 F.Supp. 578, 589 (W.D.Tex.1977); *United States v. Isaacs*, 347 F.Supp. 743, 748–49 (N.D.Ill.1972); *United States v. Bowdach*, 324 F.Supp. 123, 124 (S.D.Fla. 1971); *United States v. Borys*, 169 F.Supp. 366, 367–68 (D.Alaska 1959); *United States v. Carper*, 116 F.Supp. 817, 820 (D.D.C. 1953); *United States v. Virginia-Carolina Chemical Co.*, 163 F. 66, 75–76 (M.D.Tenn. 1908); *United States v. Edgerton*, 80 F. 374, 375 (D.Mont.1877); *see also United States v. Echols*, 542 F.2d 948, 951 (5th Cir. 1976), *cert. denied*, 431 U.S. 904, 97 S.Ct. 1695, 52 L.Ed.2d 387 (1977); *United States v. Fall*, 10 F.2d 648, 649 (D.C.Cir.1925); *United States v. Gold*, 470 F.Supp. 1336, 1351 (N.D. Ill.1979); *United States v. Daneals*, 370 F.Supp. 1289, 1296 (W.D.N.Y.1974); *United States v. Boyle*, 338 F.Supp. 1028, 1036 (D.D.C.1972); *United States v. Powell*, 81 F.Supp. 288, 291 (E.D.Mo.1948); *United States v. Amazon Industrial Chemical Co.*, 55 F.2d 254, 261–62 (D.Md.1931); *United States v. Goldman*, 28 F.2d 424, 426–31 (D.Conn.1928); W. Whitman, *Federal Criminal Procedure* § 6.9 (1950); *but see United States v. Birdman*, 602 F.2d 547, 556–58

(3rd Cir. 1979), *cert. denied*, 445 U.S. 906, 100 S.Ct. 1084, 63 L.Ed.2d 322 (1979); *United States v. Terry*, 39 F. 355 (N.D.Cal.1899).

Justification for the *per se* rule is in part founded on the premise that a case-by-case analysis to determine whether the defendant was actually prejudiced would require a detailed inquiry that inevitably frustrates and undermines the secrecy of grand jury testimony. *United States v. Treadway, supra*. Of at least equal concern is the difficulty inherent in ascertaining whether actual prejudice resulted. It is said that requiring a showing of actual prejudice or a substantial likelihood of potential prejudice would offer opportunity for the condonation of the exercise of undue influence and, further, that a standard of actual or even potential prejudice would impose upon the court a difficult burden that would outweigh the benefits to be derived. *See* Y. Kamisar, W. LaFave & J. Israel, *Modern Criminal Procedure* at 914 (4th ed. 1974). Utilization of the *per se* rule of dismissal may also fulfill in a given case the public policy of assuring fairness in the processes of justice, a policy which underlies the supervisory powers of the federal courts. *United States v. Birdman, supra* at 557, 558–60.

Yet, the instant case is markedly distinguishable from the legion of cases indiscriminately applying the *per se* rule. The violation of the one-witness requirement here occurred only in connection with the second, or superceding, indictment of August 10th under which the defendants were tried. The first indictment, then, was uninfected by the Rule 6(d) violation. It is especially significant to note that the two indictments were returned by the same grand jury. The court's review of the attendance and voting records of that grand jury reveals that each of these indictments was returned by a unanimous vote. A nucleus of the same seventeen grand jurors voted for each indictment. In addition, one other grand juror voted for the first indict-

---

**9.** *Compare State v. Manney*, 24 N.J. 571, 133 A.2d 313 (1957) (dismissal not warranted in the absence of actual prejudice), *with People v.*

*Minet*, 296 N.Y. 315, 73 N.E.2d 529 (1947) (unauthorized person held to be a *per se* basis for dismissal).

ment but did not vote on the second, while two others voted for the second indictment but did not vote on the first.

Several of the counts in the two indictments are identical or virtually so. So it is that the counts of the August 10th indictment which are identical to the same counts contained in the June 14th indictment have a probable cause basis entirely independent of the testimony presented to the grand jury after the return of the first indictment. Such is the case with respect to the substantive counts of which the defendants Lill and Mechanik stand convicted. Mechanik was found guilty under the tenth count which is identical to the sixth count in the first indictment. Lill was convicted of the second and fourth counts which are identical in both indictments except for the inconsequential fact that Gregory Louis McCafferty was charged as a fourth defendant in those same two counts in the first indictment but not in the superceding indictment.[10]

Thus, as to Lill and Mechanik on the substantive counts, there was neither prejudice nor potential for prejudice. Where neither is present, application of the *per se* dismissal rule is without virtue save for exemplary purposes. As will be developed, it is by no means necessary to dismiss the Lill and Mechanik substantive counts in order to assure future adherence by the prosecutor to the one-witness requirement.

The only remaining count requiring attention is the first count which, in both indictments, charges the offense of conspiracy. Defendants Lill, Mechanik, Zarintash and Riddle were found guilty on the conspiracy count, with the jury being unable to reach a verdict as to defendant Mark Chadwick. In the second indictment there were a number of alterations and additions to the conspiracy count as it had appeared in the first indictment. Each of them was the subject of the Rinehart/James joint testimony. The alterations and additions remaining in the redacted version of the second indictment on the basis of which the case went to the jury are set forth below. In each instance the alteration and addition was either supported by testimony apart from the Rinehart/James joint testimony or became moot by virtue of the acquittal of Kook and James Chadwick:

Addition of two defendants, James Chadwick and Russell Kook. (Both acquitted.)[11]

Alteration of the origination point of the flight as being San Marcos in Columbia, South America, instead of San Marcos, Guatemala. (Supported in part by Rebecca Markos' testimony.)

Alteration of McCafferty's placement so as to allege that he was waiting at the airport, after having traveled in interstate commerce, to meet the DC-6 plane and receive its contraband cargo on the morning of June 6, 1979, instead of being placed on the plane. (Supported by Agent James' earlier solo testimony of August 2, 1979.)[12]

---

10. The grand jury, in so doing, simply took McCafferty off the plane where he had been charged in the first indictment along with Lill and two others and placed him instead in the second indictment as a codefendant on the ground.

11. A third added defendant, McGilvray, is a fugitive who was not tried and remains at large. For failure of proof, he was struck from the redacted version of the second indictment.

12. At the conclusion of Agent James' solo testimony of August 2, 1979, Assistant United States Attorney Hoffman cautioned the grand jury that they should not consider James' testimony on that occasion, at least to the extent given in summary form, as evidence that "would go toward probable cause of anybody

else's involvement in these facts" (Court *In Camera* Ex. 42 DD, p. 9). It is observed that James' solo testimony which serves to place McCafferty on the ground rather than on the plane, as well as his testimony on the same occasion with respect to the Ryder truck rentals and travel from Cleveland which were added as overt acts, was not presented in summary form nor did it constitute a showing of probable cause of the involvement of others not named as defendants to the first indictment. Consequently, while acknowledging that the scope of the Assistant United States Attorney's disclaimer is not free from doubt, the court chooses to treat the James solo testimony just noted as evidence for consideration by the grand jury. It is further noted that each of the overt acts relating to Ryder truck rentals were proved at trial beyond any doubt.

Addition of James Chadwick as one who, along with Mark Chadwick as originally charged, was also named as providing a safe place for the DC-6 to land. (James Chadwick acquitted.)

Addition of Mark Chadwick and James Chadwick as providing a safe place for the cargo of the DC-6 to be unloaded and a safe departure from the airport for the defendants and coconspirators. (James Chadwick acquitted. Testimony in connection with the conspiracy count of the first indictment, which charged Mark Chadwick with providing a safe place for the DC-6 to land, was sufficient to support the inclusion of a charge against him of providing as well a safe place for unloading the cargo and safe departure for the defendants and coconspirators. Moreover, count one of the first indictment had specifically charged that Mark Chadwick aided the flight of certain of the defendants after the DC-6 crash.)

Addition of seven overt acts alleging rental of Ryder trucks, namely, two in Charleston, West Virginia, by defendant Mechanik and five in Cleveland, Ohio, by defendant McCafferty. (Marsha Miller's testimony supported the Ryder rentals in Charleston on April 21 and 28, 1979, appearing as overt acts d and k. Agent James in his solo testimony of August 2, 1979, established the first two McCafferty rentals in Cleveland as having occurred at the same time as the two rentals just noted in Charleston, being spelled out in overt acts c and 1 as April 20 and April 28, 1979. Rebecca Markos tended to support the third Ryder rental in Cleveland by McCafferty, which occurred as set forth in overt act q on May 5, 1979, by her testimony that she had seen McCafferty in a Ryder truck in early May, 1979. The James solo testimony of August 2, 1979, also supported the June 3, 1979, rental by McCafferty in Cleveland as set forth in overt act y, as well as the exchange for the larger truck on June 5,

1979, as charged in overt act cc, which is also supported by the Rebecca Markos testimony.)[13]

Addition of two overt acts, dd and ff, alleging interstate travel to West Virginia. (Both James' solo testimony of August 2, 1979, and Rebecca Markos' testimony support overt act ff charging travel from Cleveland on June 5, 1979.[14] William Clippard's testimony supporting the Spartanburg, South Carolina, rental by Mechanik on June 4, 1979, coupled with the White family testimony, serves to substantiate overt act dd of the same date charging travel from Spartanburg.)

Addition of overt act ii respecting James Chadwick's arrival at the jail at about 12:15 a. m. on June 6, 1979 (Supported by testimony of Kanawha County deputy sheriffs, Sergeant Larry Mullins and Corporal John Meadows. (James Chadwick acquitted.)

Addition of overt act gg respecting defendant Kook as having registered at a Ripley, West Virginia, motel on June 5, 1979. (Kook acquitted.)

Other alterations and additions to the indictment for which the joint testimony of Agents Rinehart and James was responsible were either stricken on motion at trial or resulted in acquittal. Their testimony was the basis for adding Russell Kook not only as a defendant charged with conspiracy in count one but also with a substantive offense in the seventh count. As noted, Kook was acquitted. The Rinehart/James testimony served to summarize the telephone toll records subpoenaed by the grand jury and resulted in adding to the conspiracy count the allegation, later stricken by the court at the close of the evidence, that the defendants, as one of four objects of the conspiracy specified in count one, conspired to unlawfully use a telephone communication facility in violation of 21 U.S.C. § 843(b).[15] Also stricken were the twenty-

---

13. *Id.* n. 12, at 59.

14. *Id.* n. 12, at 59.

15. The alleged unlawful use of a telephone communication facility was inserted in the second indictment, taking the place of the charge of obstruction of justice as one of the

one overt acts involving the telephone network alleged to exist between the defendants.

■ Insofar, then, as the joint testimony of Agents Rinehart and James ultimately proved to be material, the grand jury also had before it ample independent evidence to support a probable cause finding of the charges as contained in the redacted version of the conspiracy count on which the case went to the trial jury, except as to defendant Kook and possibly defendant James Chadwick who were, of course, acquitted. Although the grand jury would, in my view, undoubtedly have returned the very same second indictment even had Agents Rinehart and James testified separately, it must again be acknowledged that a potential for prejudice by virtue of their joint testimony did exist. And, in the sense that all things are possible, even actual prejudice is conceivable. Yet, the existence of actual prejudice as to the conspiracy count is so utterly remote and the absence of actual prejudice as to the Lill and Mechanik substantive counts is so plain that a mere possibility of prejudice can appropriately be disregarded.

If the issue on which the court now passes were being squarely faced prior to trial, dismissal might well be decreed as the proper and prudent course. Pretrial dismissal would serve the salutary disciplinary function of underscoring the care which the prosecutor must observe in meeting the requirements of Rule 6(d) without, as in this case, conferring a windfall benefit on four defendants who stand convicted after a three-month trial conducted at enormous expense to the United States and the defendants.

Indeed, a review of the numerous district court cases cited *supra,* at 57–58, as adopting the *per se* dismissal rule discloses without exception that dismissal was or-

dered before trial.[16] The two remaining cases, which dealt with dismissal after trial, consist of the Fifth Circuit case of *Latham v. United States,* 226 F. 420 (5th Cir. 1915), in which the *per se* dismissal rule was applied, and the Third Circuit case of *United States v. Birdman,* 602 F.2d 547 (3rd Cir. 1979), *cert. denied,* 445 U.S. 906, 100 S.Ct. 1084, 63 L.Ed.2d 322 (1979), in which the *per se* rule was avoided. Interestingly, even in the *Latham* case the utilization of the *per se* dismissal rule was of little moment inasmuch as the trial court conviction was also being reversed because of prosecutorial misconduct.

■ Rule 6(d) does not prescribe the sanction to be imposed for its violation. The rulemakers have wisely left to the courts the responsibility of fashioning sanctions appropriate to the circumstances. In this case it is sufficient that action be taken to guard against the future violation of the one-witness requirement. In order to assure that the one-witness rule is observed in subsequent grand jury proceedings, the prosecutor will henceforth be directed routinely to advise the court with respect to each criminal case indictment whether the requirements of Rule 6(d) have been fulfilled. It is observed that the court will be in a position to monitor the accuracy of the reporting process not only through Title 18, United States Code, § 3500 disclosure, but also by virtue of the increasing frequency with which the court is called upon to review grand jury material for various *in camera* purposes.

## V.

It is accordingly ORDERED that the motions of the defendants to dismiss the indictment by reason of the Rule 6(d) violation be, and the same are hereby, denied.

four objects of the conspiracy. Remaining unchanged were the other three alleged objects of the conspiracy, consisting of unlawful possession with intent to distribute a controlled substance, interstate travel with intent to promote an unlawful activity and importation of a controlled substance.

16. The court notes parenthetically that in several of the cases cited *supra* at 57–58, the question of dismissal was not reached, *see e. g., United States v. Isaacs, supra,* or dismissal was ordered for more than one reason, *see, e. g., United States v. Braniff Airways, Inc., supra.*