756 F.2d 994
 UNITED STATES of America, Appellee,
v.
Marshall MECHANIK, a/k/a Michael Patrick Flanagan, Appellant.
UNITED STATES of America, Appellee,
v.
Shahbaz Shane ZARINTASH, Appellant.
UNITED STATES of America, Appellee,
v.
Jerome Otto LILL, Steven Henry Riddle, Appellants.
UNITED STATES of America, Appellee,
v.
Mark Douglas CHADWICK, Appellant.
 Nos. 80-5166 to 80-5169.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 5, 1984.
Decided March 1, 1985.
 
 Herald Price Fahringer, Buffalo, N.Y. (Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N.Y., Edwin F. Kagin, Louisville, Ky., W. Dale Green, Michael D. Graves, Hall, Estill, Hardwick, Gable, Collingsworth & Nelson, Washington, D.C., on brief), and Richard Chosid, Fort Lauderdale, Fla., for appellants.
 Marye L. Wright, Asst. U.S. Atty., Charleston, W.Va. (David A. Faber, U.S. Atty., Charleston, W.Va., on brief), for appellee.
 Before WINTER, Chief Judge, RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, ERVIN, CHAPMAN, WILKINSON and SNEEDEN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 * For reasons stated in the majority opinion of the panel, United States v. Mechanik, 735 F.2d 136 (4th Cir.1984), the judgments convicting Mechanik, Zarintash, Lill, and Riddle on count 1 of the indictment are reversed.
 
 
 2
 Dissenting, Judge Russell, Judge Hall, Judge Chapman, Judge Wilkinson, and Judge Sneeden would affirm for the reasons stated in the dissent to the panel opinion, 735 F.2d at 141.
 
 II
 
 3
 The judgments convicting Mechanik on count 10 and Lill on counts 2 and 4 are affirmed for reasons stated in the panel opinion.
 
 
 4
 Judge Widener and Judge Phillips dissent. They would dismiss these counts of the indictment for the same reasons that count 1 is dismissed.
 
 III
 
 5
 The jury was unable to reach a verdict with respect to Chadwick, and the district court declared a mistrial. He appealed assigning several errors, including the denial of the motion to dismiss the indictment and the denial of his motion for a judgment of acquittal on the ground of insufficient evidence. He claims that retrial will subject him to double jeopardy. The panel dismissed his appeal for lack of jurisdiction, citing United States v. Ellis, 646 F.2d 132 (4th Cir.1981).
 
 
 6
 After the panel opinion was filed, the Supreme Court decided Richardson v. United States, --- U.S. ----, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984). The Court held that after a mistrial was declared because of a hung jury, the defendant's contention that retrial would subject him to double jeopardy because evidence sufficient to convict had not been presented raised a colorable claim of double jeopardy appealable under 28 U.S.C. Sec. 1291.* The Court held, however, that no valid claim of double jeopardy had been asserted because the declaration of a mistrial following a hung jury does not terminate the original jeopardy. The Court also said, 104 S.Ct. at 3086 n. 6:
 
 
 7
 It follows logically from our holding today that claims of double jeopardy such as petitioner's are no longer "colorable" double jeopardy claims which may be appealed before final judgment. A colorable claim, of course, presupposes that there is some possible validity to a claim.... Since no set of facts will support the assertion of a claim of double jeopardy like petitioner's in the future, there is no possibility that a defendant's double jeopardy rights will be violated by a new trial, and there is little need to interpose the delay of appellate review before a second trial can begin.
 
 
 8
 The order denying Chadwick's motion for a judgment of acquittal and subjecting him to retrial did not terminate the original jeopardy to which he was subjected. Accordingly, as Richardson explains in note 6, he now has no colorable claim of double jeopardy which may be appealed before final judgment. His appeal is dismissed.
 
 
 9
 No. 80-5166 (Mechanik): Count 1 reversed; count 10 affirmed.
 
 
 10
 No. 80-5167 (Zarintash): Count 1 reversed.
 
 
 11
 No. 80-5168 (Lill): Count 1 reversed; counts 2 and 4 affirmed.
 
 
 12
 No. 80-5168 (Riddle): Count 1 reversed.
 
 
 13
 No. 80-5169 (Chadwick): Dismissed.
 
 
 14
 WILKINSON, Circuit Judge, with whom Circuit Judges Donald RUSSELL, K.K. HALL, CHAPMAN, and SNEEDEN join, concurring in part and dissenting in part.
 
 
 15
 I dissent from the judgment of the court insofar as it invokes "a per se rule of invalidity" to reverse the convictions and dismiss the conspiracy count in the superseding indictment. United States v. Mechanik, 735 F.2d 136, 140 (4th Cir.1984). The creation of this extraordinary remedy is not authorized by Fed.R.Crim.P. 6(d), not justified by statute or Constitution, and not consistent with the precedent of this court. Without cause or compensation, the public will now pay the price, and convicted criminal defendants will now reap the windfall benefit, of a prosecutorial mistake. This result is not right in a system of criminal justice which has become enormously complex and in which even seasoned judges and attorneys are not immune from error. Here the district court found neither bad faith on the part of the government nor prejudice to the rights of defendants. It denied the motion of defendants to dismiss the indictment because of the violation of Rule 6(d). United States v. Lill, 511 F.Supp. 50 (S.D.W.Va.1980). Because I believe that the district court properly addressed and properly resolved the issue, I would affirm the convictions on all counts.
 
 
 16
 * No one disputes that the government violated Rule 6(d) by offering the joint testimony of Agents James and Rinehart. The question is how the district court should have responded to that prosecutorial error. In confronting this problem, the first point of reference must be the rule itself:
 
 
 17
 Who May Be Present: Attorneys for the government, the witness under examination, interpreters when needed and, for the purpose of taking the evidence, a stenographer or operator of a recording device may be present while the grand jury is in session, but no person other than the jurors may be present while the grand jury is deliberating or voting.
 
 
 18
 As the court observes, the language is "plain and unequivocal in limiting who may appear before a grand jury." 735 F.2d at 139. Clarity of prohibition, however, does not imply a rule of reversal for any and all violations. Fed.R.Crim.P. 7(c), for example, is equally plain and unequivocal in requiring the indictment to refer specifically to statutes or regulations that the defendant is said to have infringed, but errors in the citations, or complete omission of the citations, will not support dismissal of an indictment unless the error has misled the defendant to his or her prejudice. See Fed.R.Crim.P. 7(c)(3). More generally, almost any proscription of prosecutorial conduct may be cast in unambiguous terms. The appropriate remedy for a particular form of misconduct is determined not by the directness of expression but by the context, the purpose, and the practical workings of the standard involved.
 
 
 19
 The immediate context of Rule 6(d) is the conception of justice envisioned by the Federal Rules of Criminal Procedure. The rules operate as an efficient means to truth and a partial guarantee of integrity, without any pretension of being, in every detail, a necessary ritual of fairness. The rules are not an end in themselves. The rules live for, and through, the judgment. They deter noncompliance by requiring reversal where departure from the rules has affected the judgment--a threat completely adequate to ensure the obedience of the participants in the trial process. Some judicial values may be compromised by an error which has not affected the judgment, but if truth and integrity are respected, acceptance of the result offsets such a compromise by advancing nobler values of decision: the innocent are freed, the guilty are named, the commitment of resources to litigation is husbanded.
 
 
 20
 Fed.R.Crim.P. 52(a) embodies this principle, stating broadly:
 
 
 21
 Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.
 
 
 22
 Binding on this court under Rule 54(a), the plain and unequivocal language of Rule 52(a) requires us to review indictments tainted by rules violations, including Rule 6(d) violations, with attention to the likelihood that the defendant has been disadvantaged by the procedural failure. See generally United States v. Dougherty, 473 F.2d 1113, 1127-28 (D.C.Cir.1972). Adoption of a per se rule of invalidity, which allows for no such Rule 52(a) analysis, overlooks the axiom of interpretation that the rules should be read together as an integrated, harmonious whole. Ironically, the result is that a construction intended to compel adherence to the federal rules, 735 F.2d at 139, is in itself unfaithful to the restriction of enforceability, and the conception of justice, recognized by the rules themselves.
 
 
 23
 The same conclusion is compelled by related acts of Congress and decisions of the Supreme Court. The salient statute, 28 U.S.C. Sec. 2111, provides that
 
 
 24
 On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties.
 
 
 25
 Originally enacted to prevent appellate courts from looming above criminal trials as "impregnable citadels of technicality," Kotteakos v. United States, 328 U.S. 750, 759, 66 S.Ct. 1239, 1245, 90 L.Ed. 1557 (1946) (citation omitted), 28 U.S.C. Sec. 2111 echoes Fed.R.Crim.P. 52(a) in its insistence that "substantial rights" must be implicated before a conviction may be reversed. Again, that such substantial rights have been affected is determined not merely by asking whether a guarantee has been violated but by asking "what effect the error had or reasonably may be taken to have had upon the jury's decision." Kotteakos, 328 U.S. at 764, 66 S.Ct. at 1247. Toward the same end, an important line of Supreme Court cases beginning with Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), establishes that even some constitutional norms are not so independently sensitive that intrusion must always compel reversal of the subsequent judgment. In reviewing these intrusions, the appellate court will determine whether "there is a reasonable possibility that the evidence complained of might have contributed to the conviction." Id. at 24, 87 S.Ct. at 828 quoting Fahy v. Connecticut, 375 U.S. 85, 86-87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963).
 
 
 26
 Together the statute and the decisions refute a policy of per se dismissal based solely upon the promise and the purpose of Rule 6(d). To be sure, the rule does reflect considerations of justice in ensuring grand jury privacy and in preventing undue influence. But Fed.R.Crim.P. 6(d) is no more central to due process, and no more demands acknowledgment through automatic reversal, than many protections that have been subjected to harmless error analysis. See, e.g., Chapman (Fifth Amendment right to prosecutorial silence about defendant's failure to testify); Coleman v. Alabama, 399 U.S. 1, 11, 90 S.Ct. 1999, 2004, 26 L.Ed.2d 387 (1970) (Sixth Amendment right to counsel at preliminary examination); Chambers v. Maroney, 399 U.S. 42, 53, 90 S.Ct. 1975, 1982, 26 L.Ed.2d 419 (1970) (Fourth Amendment right to suppression of unlawfully seized evidence). Like these guarantees, and like the majority of procedural provisions, Rule 6(d) must be addressed in any remedial analysis through its influence on the judgment. How Rule 6(d) should somehow attain a status the Supreme Court has refused to accord non-prejudicial departures from most constitutional norms is inexplicable.
 
 
 27
 Nor is a per se response to Rule 6(d) violations suggested by the additional due process limitation of the harmless error principle to defects and consequences that are susceptible to evaluation. As Justice Harlan noted in Chapman v. California, the effect of some procedural errors is "so devastating or inherently indeterminate that as a matter of law they cannot reasonably be found harmless." 386 U.S. at 52 n. 7, 87 S.Ct. at 842 n. 7 (Harlan, J., dissenting). This rationale explains automatic reversal for errors that suffuse the proceeding, distorting the very perspective of the fact-finder, and by extension, the perspective of the reviewing court. See, e.g., Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (denial of assistance of counsel at trial). In contrast, the error at issue here involved one isolated session of prosecutorial testimony. By extracting that evidence and examining the remainder of the record, a court may determine the probability that the testimony influenced the grand jury with no more uncertainty than is inevitable in routine applications of harmless error.[1]
 
 
 28
 Alluding to the "difficult burden" upon a defendant required to show the prejudicial effect of a Rule 6(d) violation, the court appears to refine the above argument and to suggest that the effect of an error is decisively less apparent to the accused. 735 F.2d at 139. Under this theory, the limited availability of grand jury information so constricts the defendant's capacity to assess the violation as to mandate dismissal of tainted indictments. But a per se rule does nothing to lighten the truly difficult burden on the defendant--the detection of all Rule 6(d) violations.[2] The per se remedy instead addresses the burden of showing prejudice, a problem for which 18 U.S.C. Sec. 3500, Fed.R.Crim.P. 6(e)(3), Rule 16(a)(1)(A), and Rule 26.2 already equip the knowing victim. Furthermore, dismissal of the indictment is too drastic a solution to this perceived disadvantage. As the district court intimated here, the complications of defendant's position can be alleviated by placing responsibility on the prosecution to demonstrate to the court the absence of prejudice, a result further suggested by the duty of the government to prevent Rule 6(d) violations. See also Chapman v. California, 386 U.S. at 24, 87 S.Ct. at 828.
 
 II
 
 29
 Neither Rule 6(d) nor the limitations upon the harmless error principle will support a per se rule of invalidity for indictments obtained after unauthorized parties have appeared before the grand jury. The proper response is "to identify and then neutralize the taint by tailoring relief appropriate in the circumstances." United States v. Morrison, 449 U.S. 361, 365, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981). Indeed, the last time that this court reviewed an indictment on Rule 6(d) grounds, it followed precisely that approach. United States v. Computer Sciences Corp., 689 F.2d 1181 (4th Cir.1982). Noting that "each situation should be addressed on a sui generis basis," the court examined the nature of the violations, the length of the proceedings, the culpability of the government, and the likelihood that the defendants had suffered any prejudice through the error. Id. at 1184-85. Concluding that the violations had been isolated, that grand jury secrecy had been maintained, that the proceedings had been extensive, that the government had merely been negligent, and that the defendants had suffered no injury, the court declined to dismiss the contested counts of the indictment. Id.[3]
 
 
 30
 The district court followed precisely the same approach here, anticipating United States v. Computer Sciences Corp. in every respect. It found that only one violation had occurred, that it had not compromised privacy interests, and that it had taken place after the grand jury had returned much of the final indictment. The court noted that the trial pursuant to the indictment had consumed three months, at enormous expense to the government and the defendants, and had reached a conclusion that was in itself unchallenged. The court had already observed, in an earlier memorandum opinion, that the government conduct revealed no evidence of bad faith and no intent to confuse or mislead the grand jury. Finally, the court conducted a comprehensive inquiry into the likelihood of prejudice and determined that any improper influence was possible only "in the sense that all things are possible." Supra 511 F.Supp. at 61. This path of reasoning parallels that of United States v. Computer Sciences Corp. so closely that its rejection--in favor of a per se rule of invalidity--can only be interpreted as overruling a very recent precedent. See United States v. Mechanik, 735 F.2d 136, 141-42 (Hall, J., dissenting).
 
 
 31
 Distinctions between the underlying circumstances of United States v. Computer Sciences Corp. and the facts presented by this case do nothing to reconcile the contradiction; the method of analysis is the crucial area of conflict. Moreover, I see no reason to disagree with the conclusion of the district court on this record. The comparison of testimony and the history of this particular grand jury fully support the determination that the defendants suffered no prejudice through the joint appearance of the agents. The other factors were properly weighed, and the relief granted by the court was appropriate to the situation. The wisdom of the decision below, no less than the import of authority above, and a respect for recent precedent within this court, dictates affirmance of these convictions.
 
 III
 
 32
 Perhaps no aspect of this court's responsibility is more delicate than the review of criminal convictions challenged because of acknowledged procedural errors. We must identify the many changing faces of substantial right and mere technicality. We must be mindful of the complicity of the judicial system in the improper conduct. And, without meeting the jury or hearing its deliberations, we must imagine why a group of men and women chose to believe as they did. The awareness of our own limitations and the consequences of our mistakes understandably tempt us to withdraw into a sanctuary of procedure, to require every judgment to honor the rituals of rules as well as the essence of fairness. But our duty precludes that retreat. We must at least attempt to determine whether an imperfect justice remains nonetheless an act of justice. Because the decision of the court forsakes that attempt, I must, with respect, dissent.
 
 
 
 *
 The Court noted that United States v. Ellis, 646 F.2d 132, 135 (4th Cir.1981), reached a contrary conclusion. See 104 S.Ct. at 3083 n. 4
 
 
 [1]
 Obviously, another case might involve a Rule 6(d) violation more difficult to trace, just as another case might involve a Rule 6(d) violation that had prejudiced a defendant. The range of possibilities only emphasizes that each situation must be examined in its own context rather than on a per se basis
 
 
 [2]
 The district court would handle the problem of detection through its command that "in order to assure that the one-witness rule is observed in subsequent grand jury proceedings, the prosecutor will henceforth be directed routinely to advise the court with respect to each criminal case indictment whether the requirements of Rule 6(d) have been fulfilled." United States v. Lill, 511 F.Supp. at 61
 
 
 [3]
 Its invocation of a per se rule of invalidity notwithstanding, the plurality opinion attempts to adopt a measure of this sui generis approach in its disposition of the other counts of the indictment. Noting that "this case, involving a superseding indictment, presents a unique situation," the court affirms the convictions on the substantive counts because "there was a valid basis for the charges they set forth that was independent of the unauthorized joint appearance of the agents." 735 F.2d at 140. This rationale, which echoes the basis of the unchallenged district court conclusion about the conspiracy count, cannot be reconciled with a per se rule. Recognizing the inconsistency, two judges concurring in the dismissal of the conspiracy count have also voted to dismiss the entire indictment