7 F.3d 228
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sherman Frank WILLIAMS, Defendant-Appellant.
 No. 92-5248.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: May 28, 1993.
Decided: September 24, 1993.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Norwood Carlton Tilley, Jr., District Judge. (CR-91-197-G)
 Charles A. Lloyd, W. David Lloyd, Greensboro, North Carolina, for Appellant.
 Robert H. Edmunds, Jr., United States Attorney, Sandra J. Hairston, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.
 M.D.N.C.
 AFFIRMED.
 Before HALL, PHILLIPS, and WILKINS, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Sherman Frank Williams appeals his jury convictions for possession with intent to distribute 10.1 grams of crack cocaine, and possession with intent to distribute 7.19 grams of cocaine hydrochloride, both counts in violation of 21 U.S.C. § 841(a)(1) (1988), and one count of use of a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C.A. § 924(c)(1) (West Supp. 1993). Williams was convicted after the first jury was unable to agree on a verdict. On appeal, Williams argues that the district court erred in not granting his motions to suppress evidence and in failing to grant his acquittal motions during his first trial. Finding no error, we affirm.
 
 
 2
 Two plastic bags containing the drugs were found near the wooded area where Williams briefly hid on September 9, 1991, after a highspeed chase along Interstate 85 and U.S. Route 29 North near Greensboro, North Carolina. A Ruger 9mm handgun was found beneath the passenger seat of the red Ford Mustang that Williams was driving and which he abandoned near the Greensboro city landfill.
 
 
 3
 After a pretrial hearing, the district court denied Williams's pretrial motion to suppress evidence found in the Mustang, though the district judge did exclude cash totalling $3900. The cash was found in a brown bag inside a brown leather case located behind the front seat, which officers opened before the narcotics dog searched the vehicle. Officers from the North Carolina Division of Motor Vehicles ("DMV") and the Greensboro Police Department searched the Mustang without seeking Williams's consent or a warrant.
 
 
 4
 Though the officers claimed they were conducting an inventory search, Williams contended that they were seeking evidence, especially because DMV supervisors at the scene called for a drug dog while searching the vehicle. Ironically, Officer J.C. Myrick and Speedy, Greensboro's narcotics canine, were already on the scene in response to the report of a high-speed chase. Speedy twice alerted to something in the back seat, but investigating officers never recovered anything related to the dog's alerts.
 
 
 5
 Williams's first trial in November 1991 ended with a hung jury, but he was convicted on all three counts on retrial the following month. In March 1992, Williams was sentenced to a sixty-five month consolidated term on the drug counts with five years of supervised release, and sixty months on the firearms violation with three years of supervised release. The prison terms are to run consecutively. Williams appeals arguing that the district court erred in not granting his suppression motion and the motions for acquittal in his first trial.
 
 
 6
 Williams argues that the district court erred in denying his motion to suppress the gun found beneath the passenger seat, and the beeper or pager device also found in the car, because the police were engaging in a search for evidence, rather than conducting a valid inventory search. The district court conducted a pretrial hearing and took testimony from three law enforcement officers before denying the suppression motion.
 
 
 7
 Inventory searches are an exception to the Fourth Amendment's warrant requirement and serve the strong governmental interests of protecting an owner's property, protecting the police from possible danger, and insuring against false claims. While such searches are not dependent on probable cause, inventory searches must be reasonable and based on standard procedures. Colorado v. Bertine, 479 U.S. 367, 371-72 (1987); South Dakota v. Opperman, 428 U.S. 364, 372 (1976). While inventory searches are limited in scope to the caretaking functions of cataloging the contents of the vehicle, Opperman, 428 U.S. at 375, a policy giving police some discretion does not violate the Fourth Amendment. Florida v. Wells, 58 U.S.L.W. 4454 (U.S. 1990).
 
 
 8
 Fruits of an inventory search may be suppressed if the officers acted in bad faith-in an attempt to secure evidence of criminal wrongdoing-or if the officer's discretion was not circumscribed by official standard criteria. Wells, 58 U.S.L.W. at 4454; Bertine, 479 U.S. at 374-76. An officer's expectation of uncovering evidence of crime will not vitiate an otherwise proper inventory search. See United States v. Gallo, 927 F.2d 815, 819-20 (5th Cir. 1991); United States v. Roberson, 897 F.2d 1092, 1096 (11th Cir. 1990); United States v. Frank, 864 F.2d 992, 1001 (3d Cir. 1988), cert. denied, 490 U.S. 1095 (1989).
 
 
 9
 Officer Timothy Collins, assistant DMV district supervisor, and Officer Tilley of the DMV, both testified at the hearing that their purpose in searching the Mustang was to inventory the vehicle prior to impoundment because the VIN and license tag did not match, the vehicle was not registered in Virginia by computer, and they suspected that the car might have been stolen. A computer check disclosed the VIN was registered to a female in Goldsboro and Williams had no proof of ownership.
 
 
 10
 Tilley testified that he engaged in a high speed chase with Williams after he observed Williams speeding on Interstate 85. Tilley chased Williams, at speeds exceeding 100 miles per hour, off the interstate, over U.S. Route 29 North, and into the city landfill, where Williams exited the vehicle and ran into the woods. Williams reappeared several minutes later and Tilley charged him with speeding, running from police, and driving on a revoked license. Williams does not argue that his arrest was unlawful.
 
 
 11
 Though investigating motor vehicle violations, Officer J.C. Myrick of the Greensboro Police Department testified that he heard DMV supervisors at the scene say, "We'd like to get a drug dog." Myrick was the canine handler for Speedy. The pair was on the scene in response to a notice of the high-speed chase. Speedy searched the car and twice alerted to something on the back seat, but officers found nothing. Subsequent to the search by the narcotics dog, officers found the pistol beneath the front passenger seat, as well as a pager and mobile phone.
 
 
 12
 The parties have stipulated on appeal that DMV General Order No. 85 governs the agency's inventory searches. That policy, which did not appear in DMV's policy and procedure manual at the time of the hearing, apparently was formulated for the former License and Theft Section of DMV before the mid-1980s. General Order No. 85 directs that officers follow a uniform procedure for the inventory of vehicles seized or impounded. That procedure includes recording valuables and apparently missing equipment on an inventory form. Tilley testified that Collins recorded recovered items on an inventory sheet. The order specifically directs that locked containers, such as suitcases and boxes, not be opened. Instead, the officer is to write a brief description of the item on the inventory form and secure the container by locking it in the trunk. It was on the basis of this written policy that the district judge suppressed the $3900 in cash discovered in the brown bag behind the front seat.
 
 
 13
 Williams concedes that DMV's inventory searches were governed by General Order No. 85, an agency policy that requires an inventory of all vehicles seized or impounded. General Order No. 85 is more detailed and specific than the one-sentence memorandum upheld as a valid inventory policy in United States v. Brown, 787 F.2d 929, 931 n.2 (4th Cir.), cert. denied, 479 U.S. 837 (1986).
 
 
 14
 There was sufficient testimony at the hearing for the district court to find that the officers' decision to impound the vehicle was reasonable. See Brown, 787 F.2d at 931-32 (4th Cir. 1986). Williams was involved in a high-speed chase, he fled the vehicle after coming to a sliding stop, and officers testified that the VIN and license tags failed to match when they checked with Virginia authorities. The district court also excluded from evidence the $3900 in cash recovered from the closed brown bag that was opened in violation of General Order No. 85.
 
 
 15
 We hold that the district court did not err in finding that the evidence at the suppression hearing pointed to a valid inventory search, permitting the introduction into evidence of the gun and pager, though there was some evidence that officers had mixed motives in their search of the automobile. See Gallo, 927 F.2d at 819-20.
 
 
 16
 Williams also seeks reversal of the district court's denial of his motions for acquittal raised during his first trial. In his brief, Williams argues that the drug quantities recovered at the scene were more consistent with personal use than for inferring an intent to distribute, and that the evidence in the first trial was insufficient to show his constructive possession of the pistol recovered from the car. Apparently Williams adopts this tactic because the Government remedied some deficiencies in its case between trials.
 
 
 17
 Williams relies on two cases this Court decided before the Supreme Court of the United States ruled that regardless of the sufficiency of the evidence presented during the first trial, a defendant facing retrial after a hung jury has no valid double jeopardy claim. Richardson v.United States, 468 U.S. 317, 326 (1984). Williams is seeking review of the evidence presented at his first trial to have his convictions entered subsequent to the second trial reversed without arguing a claim of double jeopardy. Id. at 322. Williams does not argue that the evidence was insufficient at the second trial, and there is no indication in the record that Williams ever raised a double jeopardy issue at trial. We find that Williams is not entitled to appellate review of the sufficiency of the evidence presented at his first trial because he does not present a colorable claim of double jeopardy. See United States v. Mechanik, 756 F.2d 994, 995-96 (4th Cir. 1985) (per curiam) (in banc), reversed in part and affirmed in part on other grounds, 475 U.S. 66 (1986).
 
 
 18
 We affirm the district court's denial of Williams's motion to suppress and, because he argues no other meritorious issue, we affirm his drugs and firearms convictions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED